NEW-YORK,
Nov. 1809.

JACKSON
v.
VAN DALF-
SEN.

———————⁕ ⊛ ⁕———————

JACKSON, *ex dem.* M'CARTY, *against* VAN DALFSEN.

THIS was an action of ejectment for four lots of land, at *Coèyman's*, in the county of *Albany.* The cause was tried before Mr. Chief Justice KENT, at the *Albany* circuit, in *October*, 1807.

Where *A.* gave to *B.* a power of attorney to survey and lay out into lots, a certain tract of land, and to sell the same for the best price, so that no lot should sell for a less price than a proportionate share of 1,200 pounds, for the whole tract, reserving a right to revoke the same, &c. And *B.* had the tract surveyed and laid out into lots, and then sold the whole for the consideration of 1,200 pounds to *C.* who afterwards reconveyed it to *B. it seems* that this is a good execution of the power, so far, at least, as to vest the legal estate in the grantee. In an action of ejectment by *B.* against a stranger in possession of a part of the tract, the defendant cannot avail himself of the objection, that *B.* exceeded his power; or that he was guilty of a breach of trust, in selling the whole land to *C.*

At the trial, the plaintiff gave in evidence a power of attorney from *Andries Ten Eyck*, and *Peter Ten Eyck*, to the lessor, dated the 26th of *May*, 1796, by which they empowered *M'Carty* as follows : " to cause a tract of land at *Coeyman's* to be surveyed and laid out into house-lots and streets, and to sell the same for the highest price, and to the best advantage ; and to give and execute sufficient conveyances for the same in fee, to the purchasers thereof ; and to accept of payment therefor, at least one quarter of the purchase-money, in cash, on the execution of such conveyance ; the remaining part to be secured by a bond and mortgage, provided the said *M'Carty* shall not sell any lot for a less sum than a proportionate share of 1,200 pounds, for the whole tract, to be apportioned according to situation and quality, reserving to ourselves the right to counteract this power whenever we please, confirming, however, whatever bargain the said *M'Carty* may then have completed, which said tract of land, &c. (describing the same,) excepting thereout, a lot where the dwelling-house now stands, and a front opposite thereto in the river ; also, excepting two lots, at the place called *Ose Kraal*, adjoining the said creek ; and excepting one other lot, wherever the said *A. Ten Eyck*, and *P. Ten Eyck* choose it, before it shall be disposed of, along the said street of *Ose Kraal;* all which lots so excepted, the said *D. M'Carty* shall have nothing to do with, further than to lay them out regularly with the others," &c.

*D. G. Van Antwerp*, a witness for the plaintiff, testified that *A.* and *P. Ten Eyck* demised the old stone house at *Coeyman's* landing, with the premises in question, to one *M. B. Langdon*, who took possession thereof, under the demise, several years prior to the possession of the defendant. That the land along the river, including the premises in question, were laid out into five water-lots, of the breadth of forty feet each, by *M'Carty*, after

the power was executed to him ; that the lots are adjoin-
ing each other, and partly in front of the house, which
is fifty feet wide, &c. that *M'Carty* had a map made of
the lands comprised in the power, on which the whole
was laid out into lots and streets ; that when the power
was executed, he understood that the excepted lot, in front
of the house, was to be of the breadth of the house, but
did not recollect any specific agreement on that subject.

The plaintiff then gave in evidence a release from *A.*
and *P. Ten Eyck*, by *M'Carty*, as their attorney, to *D. G.*
*Van Antwerp*, dated the 26th of *July*, 1796, for the
whole of the land comprised in the power, for the consi-
deration of 1,200 pounds ; and also a reconveyance of
the same premises, dated the 30th of *July*, 1796, from
*D. G. Van Antwerp* to *M'Carty* the lessor, for the consi-
deration of 100 pounds.

On being re-examined, *D. G. Van Antwerp* testified, that
the conveyance to him by *M'Carty*, was without any ac-
tual consideration, paid by him, and for the purpose of
transferring the title to the lessor, in consequence of his
apprehending that *A.* and *P. Ten Eyck* were about to
revoke their power to him.

On this evidence, the defendant's counsel moved for a
nonsuit, which was denied by the judge.

*M. B. Langdon* testified, that while in possession of
the lease of the house, &c. under a lease from *A.* and
*P. Ten Eyck*, he took a lease of the premises from the
lessor ; and that a few days afterwards, at the request of
the lessor, he gave up the lease, which was destroyed ;
and the reason assigned was, that if the lease was not
given up, the witness might be liable to an action by *A.*
and *P. Ten Eyck*, and that he remained in possession,
under the lease from them, until the end of his term.

The defendant, pursuant to a notice for that purpose,
called on the plaintiff's counsel to produce the map of
the survey, and allotment of the premises, described in

NEW-YORK,
Nov. 1809.

JACKSON
v.
VAN DALF-
SEN.

the power; but it was not produced; and under the direction of the judge, the jury found a verdict for the plaintiff.

A motion was made to set aside the verdict, as against law and evidence, and for the misdirection of the judge.

*Van Vechten*, for the defendant. The lessor of the plaintiff must make out a good title against the tenant in possession. The conveyance to *Van Antwerp* was fraudulent and void; and a good title can never be derived from a fraudulent act. The conveyance was in direct contradiction to the power of attorney from *A.* and *P. Ten Eyck*, the object of which was to have the land laid out into lots, and the lots separately sold. The power also contained an express right of revocation; and it appears from the testimony of *Van Antwerp*, that the conveyance of the whole to him, was made to prevent any revocation. A deed originating in fraud is void, and will not support an action of ejectment even against a stranger.* Again, as the plaintiff's title is under a power, he must show that the power has been strictly pursued, otherwise the title must fail. Strangers were bound to take notice of this power, because it was an essential ingredient in the title. The conveyance to the attorney himself, was contrary to the express object of the power.

*Runn.* 117.
2 *Term Rep.*
749. *Cowp.* 129.

*Henry*, contra. The objections to the plaintiff's title are made by a stranger, having no privity whatever with the persons under whom the lessor claims. If the deed to *Van Antwerp* was in pursuance of the power, it is valid. If there is a breach of *trust* in the attorney, this court cannot take cognisance of it. This court looks only to the *legal* title. The power authorised the lessor to sell by lots; but so as the whole should bring 1,200 pounds. Now if one person was willing to purchase the

whole for 1,200 pounds, a sale to him would be within the power. The owners were satisfied, if they obtained that sum. No fraud can be inferred from the fact of a sale of the whole for the sum of 1,200 pounds. The circumstances of the case afford no evidence that *A.* and *P. Ten Eyck* were defrauded.

THOMPSON, J. delivered the opinion of the court. Whether the conveyance given by *M'Carty* to *Van Antwerp* was absolutely void, appears to be the material question in this case. If it was void, the plaintiff according to his own showing would have no title, and, of course, no right to recover, although no privity be shown between the defendant and the *Ten Eycks.* I do not see how this deed can be said to be void. It is not so upon the face of it ; nor does it appear to be made in violation of any statutory provision, or repugnant to any common law principles, so as to authorise the court to pronounce it, *ipso facto,* void. Whether the lessor of the plaintiff was chargeable with a breach of trust, in the sale to *Van Antwerp,* is not an inquiry of which the defendant can avail himself; no privity whatever being shown between him and the *Ten Eycks.* But it is by no means clear, that there was even a breach of trust. The general object of the *Ten Eycks* appears to have been to have the land laid out in town-lots, and sold as such. Their agent, however, was not limited in this respect. The only limitation contained in the power was not to sell any lot for a less price than a proportionate share of 1,200 pounds, for the whole tract. The consideration for which the whole tract was sold was 1,200 pounds. And had it been sold in lots it is not pretended but that the authority would have been strictly pursued. But, admitting that the agent exceeded his authority, the principals may have been satisfied with the sale, and may have subsequently

NEW-YORK,
Nov. 1809.

JACKSON
v.
VAN DALF-
SEN.

ratified and confirmed it; and it would be going great lengths to permit a stranger to disaffirm it. Although it is a well settled rule in equity, that a trustee, or agent to sell, shall not become himself a purchaser; yet it is not a matter of course for the court of chancery to interfere, and set aside the purchase, as against the agent himself; the purchase shall stand, if the *cestui que trust* chooses to agree to the sale. (1 *Caines's Cases in Error*, 19, 20.) The doctrine in equity on this subject shows how improper it would be for a court of law to inter-fere, in the first instance, between the agent and a stran-ger, and set aside the purchase, as absolutely void.

It was suggested, though not much pressed on the ar-gument, that the power of attorney did not extend to the premises in question; but that they fell among the ex-cepted lots; the evidence in the case does not appear to me to warrant this conclusion. At all events, it was a question of location, and if relied upon, ought to have been submitted to the jury. No claim of this kind ap-pears to have been made upon the trial. We are, ac-cordingly, of opinion, that the motion for a new trial must be denied.

Rule refused.