## JAMES GORDON vs. JOSIAH HAYWOOD.

A conveyance of land without consideration, is not void as to creditors, if afterwards, without notice and for a valuable consideration, the land pass into the hands of a *bona fide* purchaser.
Land may pass by force of the word "*quit*" in a deed. How far husband and wife must join in a deed to pass their respective interests in her land.

THIS was a writ of entry, in which the demandant counted upon his own seisin of a tract of land in Nottingham-West, and upon a disseisin by the tenant.

The cause was tried here at October term, 1820, upon the general issue, when it appeared in evidence, that one *Wm. Smith*, being seized of the demanded premises, in 1805, conveyed the same to one *P.*, who, at the same time, conveyed the same premises to *Sally Smith*, wife of the said *William Smith*. There was no consideration for the said conveyance to *P.*, except the conveyance of the land to the wife. After this, on the 18th November, 1805, the said *William* and *Sally* made and delivered to one *Asa Davis* a deed, as follows :

" Know, &c. that I *Sally Smith*, &c. in consideration of
" $100, to me paid by *Asa Davis*, &c. have given, &c. to the
" said *Asa Davis*, his heirs and assigns, a certain tract of
" land, (describing the demanded premises.) To have and
" to hold the said granted premises, &c. to him the said *Da-*
" *vis*, his heirs and assigns, to their only proper use and
" benefit forever. And I, the said *Sally Smith*, do hereby
" covenant, &c. (here were inserted the usual covenants.)
" And that I, *William Smith*, &c. for and in consideration of
" one dollar, to me paid by *Asa Davis*, &c. for myself, my
" heirs, &c. quit unto him, the said *Asa Davis*, all my right
" and title to the above premises, against the lawful claims
" of any persons by or under me.

" SALLY SMITH, & seal.
" WILLIAM SMITH," & seal.

It appeared, that *Davis* was a *bona fide* purchaser of the land for an adequate consideration, and that his estate in the land had been duly conveyed to the demandant.

On the part of the tenant, it appeared in evidence, that previous to the year 1805, the said *William Smith* was in-

debted to the tenant, who, after the conveyances above-mentioned, having recovered judgment against the said *William Smith* for his said debt, caused his execution to be extended upon the demanded premises, as the property of the said *Smith*.

A verdict was taken for the demandant, subject to the opinion of the court upon the foregoing case.

*Lawrence* and *Abbot*, for the demandant.

*Atherton* and *French*, for the tenant.

WOODBURY, J., delivered the opinion of the court.

*William Smith* was once the owner of the land in dispute. All his title passed by the deed to *P.*, except as against creditors. The tenant is one of those creditors; and can hold the land, as it was then conveyed without consideration, unless the subsequent conveyances have cured that defect, and are in such form as to be valid. In respect to the consideration of them, they have cured the former defect; because the demandant and *Davis*, through whom the demandant claims, both paid a full price, and do not appear to have had any notice of the former want of consideration. 1 *Sid.* 134.—*Holt* 477.—3 *Lev.* 387.—1 *East* 95.—6 *Cranch* 133.—5 *John.* 48.—10 *ditto* 197.—13 *ditto* 471.—14 *ditto* 407.—1 *John. Chan. cases* 533.

The only remaining question is, whether the subsequent conveyances were in form valid? The deed from *P.* to *Sally Smith*, though to a feme covert, was with the assent of both her and her husband; because afterwards they both undertook to convey under it. The title of the land, therefore, became legally vested in her.

The principal difficulty arises from the peculiar form of the subsequent deed to *Davis*. The husband and wife did not join in the use of the same words of conveyance, which joint form is contended to be the only legal form. Nor did one use certain words of conveyance, and the other, by jointly signing and sealing, attempt to adopt them as the words of both; which mode, notwithstanding the decisions in Massachusetts to the contrary, would perhaps be found, on full examination, to be equally effective. But on the same

paper, at the same time, they each used distinct words, only signing and sealing together ; and whether their interest can thus pass or not, is the question. Had the words used by either of them been used by persons who had the title, and who did not stand in the relation of husband and wife, they would certainly have passed the title. The only objection to those used by her is, that she is not bound by the covenants contained in them. Neither would she be, had they both used them in the common form ; and if the grantee was content to take the conveyance of the husband without covenants, he should not, and does not, complain.

The first objection to the words used by the husband is, that the expression, " quit my right," &c., is not tantamount to the words, " sell" or " release." But the best lexicographers assign to it a similar meaning ; and by it the husband clearly intended to abandon, resign or quitclaim to the grantee all his interest in the premises.(1)

(1) 10 John.
456, Jackson
vs. Fitch.*

The next objection is, that the husband grants only to *Davis*, and not to *Davis* and his heirs. It is true this passes merely a life estate. But it is to be remembered, that the husband possessed only a life estate, and consequently all passed which he possessed.

The last and great objection is, that the grantors being husband and wife, they cannot convey their several interests, like persons not standing in that relation, but must join in the use of the same language, at the same time and in the same instrument. But if the custom, by which the wife is enabled to convey by deed (for the husband could always convey his interest independent of any custom, and alone) be examined, we think this last objection must also fail.

(2) 7 Mass.
Rep 20, 291.—
8 ditto 492.—
9 ditto 172.—
13 ditto 223.
(3) 2 Inst. 673.
—Dyer 363.—
Hob. 225.

The custom is not of New-England origin, as has been elsewhere remarked,(2) but always prevailed in certain parts of England ;(3) and has long been adopted in Pennsylvania, (1 *Dall.* 11.—1 *Bin.* 470) in New-York, (15 *John.* 114) and in Virginia, (2 *Blac. Com.* 356, *note, Tucker's edi.*) This custom has doubtless grown up as a simple and cheap

* 18 John. 79, Jackson vs. Root.

Gordon
*vs.*
Haywood.

substitute for common recoveries and fines, by which femes covert could at common law convey their estates. To ascertain the spirit and character of the custom, it may be observed, that if a wife suffer a recovery or levy a fine alone, her title passes as to every body but her husband; and when he joins with her, it is only to pass his own estate and to perfect the conveyance of her's in respect to himself, by an expression of his consent. *Com. Dig.* " *Baron & F.*" *P.* —10 *Coke* 43, *a.*—1 *Leon.* 82.—*Shep.* 24.—15 *John.* 558. " A fine levied by her alone is avoidable only by her hus- " band." 1 *Hen. Blac.* 341, *Compton vs. Collinson.* On the other hand, he could always convey alone his interest in her estate, either by deed or by fine. The reason, then, of their joining in a deed is not, that their respective interests might not as well pass in separate deeds; but, that the assent of the husband to her conveyance may appear upon the face of it; and also, perhaps, that he may appear to have been present to protect her from imposition or undue influence. Thus, where his assent is not necessary to the validity of her conveyance, as in the case of dower, she may alone, and in a separate deed, and at a separate time, convey her right of dower.(1)  But in the present case, his assent and presence appear on the face of her deed; and he, as well as she, uses language calculated to pass all his interest. Moreover, they use it at the same time, on the same paper, and jointly sign, seal, and deliver the paper. The spirit and end of the custom is then fulfilled; and if there be a difference in form by the failure of the husband and wife to use the same identical words, it is an immaterial difference, because so far as they use words of conveyance applicable to their respective interests, which are the only material words, they use words possessing the same legal effect.

(1) 1 N. H. Laws 193.— 7 Mass. Rep. 12, 20.

The cases of *Lithgow vs. Kavenagh*,(2) and *Fowler vs. Shearer*,(3) present a state of facts somewhat different; and, independent of that circumstance, we do not feel prepared to yield a full assent to their correctness.

(2) 9 Mass. Rep. 161.
(3) 7 Mass. Rep. 21.

*Judgment on the verdict.*