## RICE *et al. v.* CLEGHORN *et al.*

EXECUTORS AND ADMINISTRATORS—SALES OF REAL ESTATE BY.—*A*, on *August* 13, 1850, caused the real estate owned by *B*, at his death, to be inventoried and appraised by competent persons, selected by him, who were first sworn as required by law. *A* was, on the next day, duly appointed guardian of the heir at law of *B*, deceased, and gave bond and took the oath of office; and, on the latter day, filed his petition in the Probate Court, alleging the death of *B*, leaving a widow, and the heir at law aforesaid, and that after the death of *B* he married the widow, who has since died, intestate, and that no administration was ever granted on *B's* estate, and that said estate is indebted to him in a large sum, and that he also expended a large sum in the support and education of his said ward, and that *B* left no personal property, but did leave the real estate inventoried and appraised as aforesaid, which it will be necessary to sell to pay the debts against his estate, &c., and for the maintenance and education of his said ward, and he filed the said inventory and appraisement with his petition. The prayer of the petition was that *A* be appointed administrator of said estate, and for an order to sell the real estate aforesaid at private sale, and that his ward be summoned, &c. The petition was verified. The Court thereupon appointed *A* administrator, and he duly qualified as such. It was then shown that his ward was a non-resident of the State, and it was then ordered by the Court that he be notified of the pendency of the petition by publication, which was done. At the next term of said Court the ward, failing to appear, was defaulted, and a guardian *ad litem* appointed for him, who answered. At the *February* term in 1851, before any further proceedings were had, *A* was removed by the Court, upon the application of another creditor, and his letters of administration were annulled. *C* was then appointed administrator *de bonis non* of the estate of *B*, and filed his additional bond as required prior to the sale of real estate, and then the Court, upon the original petition of *A*, ordered the real estate to be sold, at private sale, for the purposes therein indicated, and on terms prescribed by the Court. At the *August* term

Rice et al. *v.* Cleghorn et al.

of said Court in 1851, said administrator *de bonis non* reported that he had sold said real estate to *A*, for more than its appraised value, on the terms prescribed, and *A*, waiving the credit, paid the purchase money, and the sale was duly reported to, and confirmed by, the Court, and a proper conveyance was executed and delivered to him therefor. The sale thus made was afterwards alleged to be invalid, amongst other reasons, because, when the petition for the sale was filed by *A*, he had not been appointed administrator, and the appraisers were selected by *A*, and the appraisement made before his appointment.

*Held,* that, under sections 27 and 28 (R. S. 1843, p. 455,) the sale so made was valid.

TRUSTEE—VENDORS AND PURCHASERS.—The purchase, by a trustee, of trust property, is not void, but may be avoided by the *cestui que trust*, within a reasonable time, by a direct proceeding for that purpose, but such avoidance can not be effected at the suit of a third person.

APPEAL from the *Elkhart* Circuit Court.

DAVISON, J.—This suit was instituted by *Rice, Sherman* and *Crews* against the appellees, to quiet the title to lands in *Laporte* county, and described as the "east half of the southeast quarter of section 17, and the north-west quarter of section 32, all in township 38, north of range 1 west," and also to set aside an administrator's sale, under which *Cleghorn* claims the lands. The facts alleged in the complaint are, in substance, as follows: The land in dispute belonged to *Luther Rice*, a *Pottawattomie* Indian, who migrated from *Laporte* county in the year 1835, and went to the then Indian country west of the State of *Missouri*, where he resided until his death, which occurred in 1843. At his death he left a widow, *Ann Rice*, who was also an Indian of the full blood, and the plaintiff, *William M. Rice*, the only child of *Luther* and *Ann Rice*, and his only heir. In 1843, a few months after the death of *Luther Rice*, *Cleghorn*, who is a white man, married

Rice et al. *v.* Cleghorn et al.

the widow, who died in 1849 without issue by him. *Luther* and *Ann*, and their son *William M.*, are all of Indian blood, all resided in said Indian country, and *William M.* still resides there, and never has been, since the death of his father, a resident of *Indiana*. *Cleghorn*, it is alleged, in *August*, 1850, came to *Indiana* and fraudulently caused to be issued to himself, out of the Probate Court of said county, letters of administration on the estate of *Luther Rice*, and was also by said Court appointed guardian of *William M. Rice*, who was then a minor, and who did not arrive at full age until some time in the year 1853. On *November* 16th, 1850, *Cleghorn* petitioned for an interlocutory order against *William M. Rice*, to sell the above described real estate, and, afterwards, such proceedings were had in said Court that, at the *February* term in the year 1851, *Cleghorn* was removed and the defendant, *Likins* was appointed administrator *de bonis non*, who at the same term and at the instigation of *Cleghorn*, proceeded to and did procure the order of sale. After this, at the *May* term, 1851, the order, on motion of *Likins*, was modified so as to allow the sale to be private, and afterwards *Likins*, as such administrator, sold the same lands to *Cleghorn* at private sale, for 1,176 dollars. The sale was reported to the Court, was confirmed, and a commissioner was appointed who made a deed to the purchaser.

It is averred that no appraisement of the land was made, by either *Cleghorn* or *Likins*, while they, respectively, acted as administrator, and that *Likins* stated in his report of the sale that he had, on *August* 4th, 1851, sold the land for the best price it would bring, when, in truth, the sale was made at a price less, by 75 cents per acre, than had been, prior to the time the same was sold, offered by responsible persons; that the order of sale was founded on two claims, one in favor of *Cleghorn* for 658 dollars, and the other in favor of one *Vicory* for 72 dollars; that the former was false and

fraudulent, and trumped up for the purpose, and the latter, if ever it was just, was barred by the statute of limitations; that *Cleghorn* was removed from his trust as administrator by his own fraudulent connivance, in order that he might be the better able to defraud *William Rice;* and that at the time of the sale, and previous thereto, *Likins* well knew that *Cleghorn* was professing to act as *William M. Rice's* guardian, and that they, *Cleghorn* and *Likins,* throughout the whole proceedings, combined and confederated to cheat him out of his land; that one of the 80 acre lots of the said north-west quarter sold for more than sufficient to pay all the claims against the estate, including the cost of administration, and yet, notwithstanding this, *Likins,* confederating with *Cleghorn,* fraudulently sold to him, he at the time professing to be the guardian of *William M. Rice,* the entire tract, 240 acres, for 1,176 dollars.

It is further averred that the deed of the commissioner to *Cleghorn,* though it was executed *August* 11th, 1850, was not recorded until the 15th of *June,* 1853. And that on the 4th of *June,* 1853, *William M. Rice,* he then being of full age, by deed in fee, conveyed the described land to the plaintiffs, *Sherman* and *Crews,* which deed was, on the last named day, duly acknowledged and recorded, and the same deed was again executed, acknowledged and recorded on the 22d of *September,* 1853; that the land, at the time *Rice* made and delivered the deed, was timbered land, wholly unimproved and unoccupied, but the right of possession thereof was vested in him, and he then took his grantees on the land and delivered to them peaceable possession in their own right, which vested in them the fee simple, and that at the commencement of this suit they still hold peaceable possession, &c.

And further, it is averred, that all the proceedings in the Probate Court were had without the knowledge of *William M. Rice,* before he was of full age, and whilst he lived in the

Indian territory, and while *Cleghorn* himself was a resident of said territory; and that *Cleghorn* has no title to the land in question other than that which he claims to derive under the proceedings of said Court; wherefore, &c.

The defendants answers consist of nine paragraphs. The plaintiffs demurred to the fifth, sixth, seventh, eighth and ninth, but their demurrers were overruled, and replies having been filed, the issues were submitted to a jury, who found specially as to certain questions of fact propounded to them at the instance of the plaintiffs. And they also found a general verdict for the defendants. Motion for a new trial denied and judgment.

Among the various errors assigned are the following: "The Court erred in permitting the defendants to give illegal and irrelevant testimony to the jury," and "in giving irrelevant, erroneous and illegal instructions." The points involved in these assignments are not properly before us, for the reason that they do not appear to have been presented to the consideration of the Court in the motion for a new trial. There is, indeed, but one question to be considered in the decision of this case. Are the proceedings of the Probate Court relative to the sale and conveyance of the land, of sufficient validity to sustain *Cleghorn's* title?

A transcript of the record of these proceedings, filed with the answer, and given in evidence on the trial, stated thus:

On *August* 13th, 1850, the land was inventoried by *Joseph Likins* and *William Davis*, and by them appraised at 1,120 dollars. That is to say: the east half of the south-east quarter was appraised at 160 dollars, and the north-west quarter at 960 dollars. The appraisers were sworn in the form prescribed by the statute; but they do not appear to have been appointed by the Court, though their appraisement was filed in Court, and constitutes a part of the record of its proceedings. On the next day, *August* 14th, *William M. Rice*, by

Rice et al. *v.* Cleghorn et al.

*James Bradley,* his attorney, appeared in Court and filed his petition, alleging that he is a minor over the age of 14, and has no guardian to take care of his person and estate, and praying that he may be permitted to make choice of some suitable person as his guardian. And thereupon the Court appointed *William Cleghorn* as such guardian who appeared and accepted the appointment, gave bond in the penalty of 100 dollars, with *Joseph Likins* as his surety, which was accepted by the Court, and he took the oath prescribed by law.

On the same day, *August* 14th, *Cleghorn* filed his petition, wherein he alleges, *inter alia,* that *Luther Rice* died in the year 1843, in the Indian country west of the State of *Missouri,* and leaving his wife, *Ann Rice,* and *William M. Rice,* his only child, now 18 years old, who also resides in said Indian country, and for whom he, *Cleghorn,* is guardian; and .that after the death of *Luther Rice* he married the widow, who has since died; that no letters of administration have ever been granted on *Luther's* estate, and that that estate is indebted to him, the petitioner, by promissory note and otherwise, 370 dollars, and in addition he has expended large sums of money in the maintenance and educatian of the said *William M.,* and has not available means in his hands out of which to reimburse the same; that *Luther,* when he died, left no personal property, but was at that time seized in fee of certain land (the same as above described) in *Laporte* county, which it will be necessary to sell for the payment of the debts against the estate, &c., and for the maintenance, &c., of *William M.;* and that he has caused the same land to be appraised and files herewith an inventory and appraisement thereof. The prayer was that letters of administration be granted to the petitioner; that the Court will order the land to be sold at private sale for the purposes aforesaid, and that *William M. Rice* be summoned, &c. The petition was verified by affidavit, &c. The Court thereupon appointed *Cleghorn* admin-

istrator of said estate, and having executed bond as adminis trator, in the penalty of 100 dollars, with *William Davis* as his surety, he took the usual oath, &c. It was then proved by affidavit that *William M. Rice* was not a resident of the State, and the Court ordered that he be notified, &c., by publication. Afterwards, at the *November* term, 1850, the notice so ordered was proved to have been duly published, and the said *William M.* having been called was defaulted, and one *Samuel E. Williams* was, by the Court, appointed his guardian *ad litem,* who for and on behalf of the minor filed an answer to the petition in the usual form. At the *February* term, 1851, and before any further proceedings on said petition, the Court, on the petition of one *John Vicory,* a creditor of the estate, removed *Cleghorn* by annulling his letters of administration, for the reason that he had failed to give bond as required by law, for the faithful discharge of his duties in the sale of the land, &c. And *Joseph Likins* was, at the same term, appointed administrator *de bonis non,* gave bond in the penalty of 100 dollars, with *Henry Brown* as his surety, and was duly sworn, &c. Afterwards, at the term last aforesaid, *Likins,* as administrator, appeared and filed an additional bond, with the same surety, in the penal sum of 2,240 dollars, and thereupon the Court, upon the petition so filed as aforesaid, and upon proof, &c., ordered the land to be sold for the purposes indicated in the petition, and that the administrator proceed to make sale thereof, at a price not less than twothirds its appraised value, one-third of the purchase money to be paid in hand, one-third in nine, and one-third in eighteen months, the purchaser giving his notes with approved security, and that he give such purchaser a certificate of purchase, &c. This order was afterwards, at the *May* term, 1851, on petition of the administrator, so modified by order of the Court as to allow him to sell the premises at private sale. And afterwards, at the *August* term, 1851, the

Rice et al. *v.* Cleghorn et al.

administrator reported, *inter alia*, that he had sold the land to *William Cleghorn*, at private sale, for 1,176 dollars; that is to say: the east half of the north-east quarter for 160 dollars, and the north-west quarter for 1,016 dollars, on the terms specified in the order; but *Cleghorn*, the purchaser, has paid and accounted to him, the administrator, for all the purchase money, &c. The report thus made was confirmed by the Court, and *James Bradley, Esq.*, was appointed a commissioner to execute a deed to the purchaser pursuant to the sale, which deed was accordingly made and delivered.

In these proceedings there are two irregularities, which we propose to consider: 1. The application for letters of administration and the petition for the sale of the land were filed together; in other words, when the petition for the sale was filed, *Cleghorn* had not been appointed administrator. 2. The appraisers were selected by *Cleghorn* and the appraisement was made before his appointment. These irregularities very plainly appear on the face of the transcript, and the inquiry at once arises, whether they render the order of sale inoperative and void?

An act of 1843, in force when the proceedings set out in the transcript were had, provides that, "in case any action shall be brought for the recovery of any real estate, sold by an administrator under the direction of the Court, or if any other action be brought by which the validity of the sale shall be contested, such action shall not be maintained, nor such sale avoided, on account of any irregularity or defect in the proceedings, if it shall be made to appear: 1. That the sale was directed by a Court of competent jurisdiction. 2. That the administrator took the oath and gave bond as required by law. 3. That notice of the time and place of sale was given in the manner prescribed by law. 4. That the premises were sold accordingly, and are held by one, or under one, who purchased them in good faith." Rev. Stat. 1843, p. 458, §§

Rice et al. *v.* Cleghorn et al.

27 and 28. Are the proceedings to which we have referred within the requirements of this enactment? The Probate Court, it must be conceded, had jurisdiction of the case. *Id.* 501, 502, 503. And the transcript of the record affirmatively shows that the defendant, in the proceeding, was notified in the mode prescribed by the statute. *Id.* 528, sec. 224, and a guardian *ad litem* was duly appointed. *Id.* sec. 226. But if the record was silent on the subject of notice, jurisdiction of the person would be presumed. 1 Ind. 130. The administrator who sold the land took the oath required by law, and was in other respects qualified to proceed to the discharge of the duties of the trust. And "previous to the making of the order of sale" he executed a bond as the statute requires, with surety to the approval of the Court, and in a penalty "not less than double the appraised value of the land." *Id.* p. 529, sec. 234. But it is said that as the appraisement was made prior to the appointment of any administrator it was a nullity, and could not, therefore, be allowed to constitute a basis upon which to measure the penalty of the bond. This conclusion is not, it seems to us, strictly correct. The appraisers appear to have been duly sworn, and though they were selected by *Cleghorn* before he became administrator, still the appraisement was merely irregular.

The competency of the appraisers, or that their inventory contained a true estimate of the value of the land, does not seem to have been successfully contested. Having been placed on file, and recognized by the Court, it was, as an appraisement, within the substantial requirements of the statute; and the result is, the bond given immediately "previous to the making of the order of sale" was effective and binding on the parties, and must be deemed "as required by law." It is true, notice of the time and place of sale was not given, nor was such notice at all necessary, because the petition asked, and the Court, in the exercise of its discretionary power, or-

dered, the land to be sold "at private sale." *Id.* 529, sec. 233. The administrator, in making a private sale, is not required to fix "the time and place of sale," and it seems to follow, that the notice, directed by the statute, relates to sales to be made "at public auction." *Id.* Where, then, the order is to sell at private sale, and the property has been accordingly sold, notice of time and place is not essential to the validity of the sale. And whether the land was purchased by *Cleghorn*, in good faith, was a pure question of fact, which has been answered by the jury in their verdict for the defendants. And, in addition, the jury found specially, that the purposes of *Cleghorn*, relative to the proceedings in the Probate Court, and the purchase of the property, were not fraudulent.

The appellants assume another ground, which we will notice. They say that *Cleghorn*, when he purchased the land, was the acting guardian of *William M. Rice*, the only heir of *Luther Rice*, deceased; and hence the sale was void. This position is not strictly correct. The purchase by a trustee of trust property is not void, but may be avoided by the *cestui que trust*, within a reasonable time, in a direct proceeding for the purpose; but such avoidance can not be effected at the suit of a third person. *Shaw* v. *Swift*, 1 Ind. 565; *Doe* v. *Harvey*, 3 *id.* 100; *Hawkins* v. *Regan*, 20 Ind. 193; *Jackson* v. *Vandalfson*, 5 Johns. 43. Here, *Sherman* and *Crews* being, as contemplated by the will, third persons, can not be allowed to avoid the sale of the administrator, on the ground that *Cleghorn*, when he purchased, was guardian. And *William M. Rice*, by his conveyance of the land, before the institution of this suit, invested them with, and divested himself of, all his title to, and interest in, the premises, so that they are the real parties in interest. And, moreover, the evidence shows, that, after he became of full age, he made a settlement with his guardian, and received of him 500 dollars and 16 cents, the residue of the sum for which the land was purchased, after

payment of the claims, to be paid out of the purchase-money. This, it seems to us, was, in effect, a confirmation of the sale. We are of opinion that the sale to *Cleghorn* was valid, and that the verdict is right upon the evidence. It follows the judgment must be affirmed.

*Per Curiam.*—The judgment is affirmed, with costs.

*J. A. Liston*, for the appellants.