## TEN EYCK v. CRAIG.

*Adverse possession — sale of lands held adversely —Equity of redemption — Trusts — purchase of property of cestui que trust by trustee —Mortgagee in pos session — who is — nature of trust — may purchase mortgaged property under execution against mortgagor.*

C. became surety for S. and received to indemnify him a mortgage upon a hotel upon which C. already held mortgages, also an assignment of the rents (with power to dispossess tenant and to lease) to pay the interest upon the mortgages, the balance to meet any liability incurred as surety, and C., under the assignment, collected the rents. Afterward on a sale under a judgment against S. obtained by a bank prior to the indemnity mortgage, C. purchased the hotel, thereafter P., who owned a judgment against S., obtained intermediate the bank judgment and the giving the indemnity mortgage, redeemed and took a sheriff's deed. C. was compelled to pay the amount of the surety bond subsequent to which he purchased the hotel from P. S., after he had given the indemnity mortgage and assignment of rents to C., sold with warranty his interest in the hotel to L., whose executrix, after the purchase by C. from P., assigned the interest of L. to plaintiff. L. or his executrix never had possession, but C. had. Plaintiff brought action to redeem, and for an accounting, claiming that C. was trustee for S., and the purchase by him was for the benefit of S.

*Held,* (1) that C. holding adversely, the conveyance from the executors of L. was inoperative; (2) that even if C. was a trustee as to S., the purchase could be avoided only by S., and not by L. or his grantee, and this would not be affected by the covenant of warranty in the conveyance to L.

*Held,* also, that the authority to collect the rents, etc., contained in the assignment thereof, did not constitute C. such an agent of S. as to prevent him from purchasing the hotel at the execution sale ; that this was not affected by the fact that C. was mortgagee ; and that C. was not by the assignment rendered a mortgagee in possession.

*Held,* further, that the rule incapacitating trustees and persons holding confidential or fiduciary relations, from purchasing the subject of the trust, has no application to mortgagees, either out of or in possession.

MOTION by defendants for a new trial upon case and exceptions, under section 268 of the Code.

The action was brought in Monroe county, by Henry Ten Eyck against John Craig and another, for an accounting and to redeem from a mortgage. During the pendency of the action, John Craig died, and Oscar Craig and Daniel W. Powers, his executors, and Helen M. Powers, his sole heir at law, were substituted as defendants. The circumstances of the case were these:

On the 23d of April, 1866, Nelson P. Stewart, then being the owner in fee of certain real estate, situate in the city of Rochester, known as "Congress Hall," executed a mortgage of that property and of a farm in Erie county, to said John Craig, to indemnify him for becoming Stewart's surety in an undertaking made to stay proceedings on a judgment recovered in the supreme court on the 24th day of October, 1859, in favor of one Maria L. Dehon, executrix, against Stewart, for $10,184.83, on an appeal taken by Stewart from said judgment. At the time of the execution of said mortgage, said Congress Hall property was subject to three prior mortgages, amounting to about $19,000, two of which were then owned by John Craig, and the third by Asa Sprague, who subsequently transferred it to the said John Craig. The said Congress Hall property was also subject, at the time of the execution of said indemnity mortgage, to a lease executed by Stewart to Robert D. Cook for the term of five years, from the 1st day of May, 1860, at a rent of $3,600 a year, payable monthly in advance.

On the 24th of April, 1860, Stewart assigned said lease, and the rents payable thereon, to John Craig, as further indemnity for his becoming surety as above stated, by an instrument in writing, reading as follows:

"Whereas, on or about the 24th of October, A. D. 1859, one Theodore Dehon, of New York, recovered a judgment in the supreme court against Nelson P. Stewart for the sum of $10,184.83, entered upon a report of referee, from which judgment said Stewart has appealed to the general term of the supreme court, and for the purpose of staying proceedings upon the said judgment, the undersigned John Craig has consented to sign and execute the necessary undertaking to stay the proceedings upon said judgment. Now for the purpose of securing the said Craig for becoming such surety (in addition to other securities made to him), the said Nelson P.

Stewart hereby sells, assigns, and transfers to said Craig the annexed lease of Congress Hall, executed by R. D. Cook to me, and said Craig is hereby authorized to demand and receive the rents reserved by said lease for the term thereof, or until said Craig shall be relieved from liability on his undertaking, from which rents said Craig is to pay the interest upon the mortgages now on said premises, held by himself and Asa Sprague, the insurance thereon, and the balance of said rents are to be held by said Craig to meet any liability upon his said undertaking upon the appeal aforesaid, upon which balances so remaining in his hands said Craig is to allow interest to said Stewart. And for the more ample protection of said Craig, it is hereby agreed that in case said Cook from any cause shall fail to meet his rents, or shall fail to perform his covenants or to keep said house and the said premises shall be vacated, or said lessor shall be entitled to the possession; that then and in that case the said Craig shall have full power and authority to take the actual possession of said premises and relet the same in the name of said Stewart, holding the lease and rents under his assignment for the term or period for which he shall remain responsible upon said undertaking; when said Craig shall be relieved of responsibility upon the said undertaking, he is to render an account and pay over the rents which may have accumulated in his hands as above provided.

" NELSON P. STEWART,
" JOHN CRAIG."

" ROCHESTER, *April 24th*, 1860."


John Craig was made liable on his said undertaking as surety, and was compelled to pay $12,301.21 thereon on the 7th of August, 1862. Said Craig foreclosed his indemnity mortgage so far as it related to the property in Erie county and realized therefrom the sum of $2,615.88. On the 17th of December, 1860, the Congress Hall property was sold on an execution issued upon said judgment in favor of the Madison County Bank, and was bid off at such sale by the defendant Craig for the sum of $5. On the 17th of March, 1862, Daniel W. Powers, by virtue of a judgment recovered by him against Stewart on the 26th of January, 1860, for $1,481.78, redeemed the Congress Hall property from said sale; and on the 21st of March, 1862, the sheriff, in completion of such sale, executed a deed of said property to Powers. On the 7th of May, 1864, Powers by deed of

that date conveyed said property to John Craig in consideration of the sum of $1,753.53 paid by Craig. The deed was recorded the 9th of February, 1867.

On the 27th of April, 1860, Stewart and his wife conveyed Congress Hall to Henry K. Sanger by deed, subject to the several mortgages above stated, except the indemnity mortgage. Sanger died previously to July, 1864, leaving a will duly executed bearing date the 7th of May, 1862, which was admitted to probate the 19th of July, 1864, and by which he gave to his wife all his estate, real and personal, and named her as sole executor. Mrs. Sanger, the wife of Henry K. Sanger, as devisee and executrix, conveyed Congress Hall to the plaintiff, Henry Ten Eyck, by deed dated the 3d of January, 1867. The deed recited a consideration of $200. This action was commenced the 13th of July, 1867. The court before whom the action was tried found that the judgment under which Powers redeemed had been assigned by Powers on the 10th of April, 1860, to Oliver M. Benedict, in consideration of the amount then due on the judgment paid to Powers; that the said Benedict was the confidential adviser of Stewart, and the purchase and assignment in his own name was at the request of Stewart, and with funds furnished or replaced by Stewart; that the judgment was re-assigned to Powers on the day of the redemption of the property, and that there was no evidence that this was done with the knowledge or consent of Stewart; that during 1861 and 1862 Benedict was the attorney and counsel of both Powers and Craig; that Craig a part of the time during those years made Benedict's office his place of business, and that Powers was the son-in-law of Craig.

The conclusions of law found were these: That the said John Craig, on entering upon the collection of the rents on the assignment of the lease of Congress Hall property, was in the position of a trustee for Stewart in respect to the leased property and his purchase of the same while he occupied that position inured to the benefit of the *cestui que trust* at his election; that when Benedict, the attorney and confidential adviser of Stewart, held the judgment under which Powers redeemed, he held it in trust for Stewart; that Powers, as the assignee of Benedict, without consideration, took Benedict's right in the judgment and no more, and when Powers redeemed he took the land subject to the trust which attached previously to the judgment in his hands; that from the intimate relations existing between Powers and Craig,

and from the circumstances above found respecting their dealings with each other and with the Congress Hall property, Craig was chargeable with notice of said trust; that Stewart, while he owned the Congress Hall property, had the right to redeem the same on paying to Craig the amount of his liens and advances over and above his receipts, and that the plaintiff Ten Eyck, by means of the successive conveyances above stated, had succeeded to such right of Stewart to redeem said property, and was entitled to redeem.

The court directed judgment declaring that plaintiff had the right to redeem the property in question on paying to the defendants the sums to which they were equitably entitled, and that a referee be appointed to take and state the accounts, etc.

*Theodore Bacon* and *Henry R. Selden,* for plaintiff. The right of redemption has always been guarded with extreme care. 4 Kent's Com. 158, 159; *Holridge* v. *Gillespie,* 7 Johns. Ch. 30; *Wright* v. *Bates,* 13 Vt. 341. Stewart, if living, would have been entitled to redeem, notwithstanding the sale on execution, the redemption and sale by Powers to Craig. *Howell* v. *Baker,* 4 Johns. Ch. 120; Kerr on Frauds, 163; *Howell* v. *Ransom,* 11 Paige, 538; Lewin on Trusts, 724, § 1, 725; *Lamberton* v. *Smith,* 13 Serg. & R. 311; 1 R. S. 739, § 143; *Bush* v. *Lathrop,* 22 N. Y. 535; *Montague* v. *Dawes,* 14 Allen, 373; *Anderson* v. *Van Alèn,* 12 Johns. 343, 345; *Grimstone* v. *Carter,* 3 Paige, 421, 423, 427, note a; *De Ruyter* v. *St. Peter's Church,* 2 Barb. Ch. 558; *Taylor* v. *Stibbert,* 2 Ves. Jr. 440; *Hawley* v. *Cramer,* 4 Cow. 723; *Crofton* v. *Ormsby,* 2 Sch. & Lef. 600; 4 Kent's Com. 164–167, 438, note c; Coote on Mortg. 366, 368; 1 Hilliard on Mortg., ch. 15, §§ 1–18; *Trimleston* v. *Hamill,* 1 Ball. & Beat. 385; *Van Metre* v. *Griffith,* 4 Dana, 92, 94, 95; *Morgan* v. *Boone,* 4 T. B. Monr. 297; *Jackson* v. *De Lancy,* 13 Johns. 537; *Robinson* v. *Pett,* 3 P. Wms. 251, note a; *Bart* v. *Jarman,* 10 Price, 84; Fonbl. on Eq. 257; *Casborne* v. *Scarfe,* 1 Atk. 609; Story's Eq. Jur., §§ 1013, 1015, 1016, 1028; *Cholmondely* v. *Clinton,* 2 Jac. & Walk. 181; *Casborne* v. *Inglis,* 1 Atk. 603; *Bergen* v. *Bennett,* 1 Cai. Cas. 16; *Price* v. *Price,* 15 L. J. Ch. (N. S.) 13; *Michoud* v. *Gerod,* 4 How. (U. S.) 556; Tiff. & Bull'd on Trust, 145; *Van Epps* v. *Van Epps,* 9 Paige, 241; *Torrey* v. *Bank of Orleans,* id. 663; *Ringo* v. *Burns,* 10 Pet. 269, 281; *Green* v. *Winter,* 1 Johns. Ch. 36; *Parkist* v. *Alexander,* id. 397; *Rogers* v. *Rogers,* Hopk. 515; *Gardner* v. *Ogden,* 22 N. Y.

327, 346; 1 Story's Eq. Juris., §§ 316, 316a; 2 id., §§ 1211a, 1275; Will'd Eq. Juris. 186, 188–190 ; *Moore* v. *Moore,* 5 N. Y. 256 ; *Colburn* v. *Morton,* 3 Keyes, 296 ; *Oliver* v. *Court,* 8 Price, 127 ; *Noyes* v. *Blakeman,* 6 N. Y. 579 ; *Req.* v. *Commissioners,* 15 Ad. & El. 562 ; *King* v. *Cushman,* 41 Ill. 31, 38 ; Washb. on Real Prop. 583, notes 5, 6, 7 ; *Dickinson* v. *Codwise,* 1 Sandf. Ch. 226 ; *Brown* v. *Simons,* 44 N. H. 475 ; *Slee* v. *Manhattan Co.*, 1 Paige, 48 ; *Torrey* v. *Bank of Orleans,* 2 id. 663 ; *King* v. *Cushman,* 41 Ill. 38 ; *Campbell* v. *Walker,* 5 Ves. 678 ; *Davoue* v. *Fanning,* 2 Johns. Ch. 252 ; *Steele* v. *Babcock,* 1 Hill, 530 ; *Baker* v. *Whiting,* 3 Sumn. 482. Plaintiff has the same right that Stewart would have. 4 Kent's Com. 162; *Jackson* v. *Varick,* 2 Wend. 166; *Anonymous,* 3 Atk. 313 ; *Van Horne* v. *McLaren,* 8 Paige, 289 ; *Thalhimer* v. *Brinckerhoff,* 3 Cow. 646 ; *Small* v. *Mott,* 22 Wend. 403 ; *Campbell* v. *Jones,* 4 id. 310 ; *Crary* v. *Goodman,* 22 N. Y. 177 ; *Wood* v. *Griffith,* 1 Swanst. 55, 56 ; *Allen* v. *Smith,* 1 Leigh (Va.), 231 ; *Baker* v. *Whiting,* 3 Sumn. 476 ; 4 Kent's Com. 449, note a ; *Clapp* v. *Bromagham,* 9 Cow. 556 ; *Zeller's Lessee* v. *Eckert,* 4 How. (U. S.) 289, 295 ; *Aggas* v. *Pickerell,* 3 Atk. 225.

*George F. Danforth,* for defendant.

GILBERT, J. There are two insuperable objections to the granting of the relief which the plaintiff seeks, unless a mortgagee can be converted into a trustee. In the first place, the conveyance from Mrs. Sanger to him, and under which alone he claims any interest in the premises in controversy, is wholly inoperative and void as against the defendants, for the reason that when said conveyance was made, the decedent, Mr. Craig, was in possession of the premises, claiming under a title adverse to that of Mrs. Sanger. 1 R. S. 739, § 147; 2 id. 691, § 6. There is, therefore, a fatal lack of that privity which is requisite to entitle the plaintiff to redeem.

In the second place, assuming that the relations between the deceased, Mr. Stewart, and the decedent, Mr. Craig, independent of the mortgages, were those of *cestui que trust* and trustee, still the plaintiff is a stranger to the trust. The purchase of Mr. Craig was not void, but was voidable only at the election of the *cestui que trust,* or his heirs, or personal representatives. It is perfectly valid and effectual, both at law and in equity, unless that election be exercised within the time allowed by the rule governing such cases.

No one but the *cestui que trust*, or some one standing in his place, can be heard to make such election.

The purchase shall stand if the *cestui que trust* acquiesce in the sale. *Jackson* v. *Van Dalfsen*, 5 Johns. 43 ; *Jackson* v. *Walsh*, 14 id. 415 ; *Jenison* v. *Hapgood*, 7 Pick. 8. No one but the *cestui que trust* has a right to call in question a purchase made by the trustee. *Wilson* v. *Troup*, 2 Cow. 238. · If, under any circumstances, such a right of election to avoid a purchase made by a trustee would pass to the grantee of the property purchased, by virtue of a conveyance thereof by the *cestui que trust*, no such result followed the conveyance by Stewart to Sanger, for the purchase by Craig, which the plaintiff seeks to avoid, was made several years after that conveyance. Nor did any such right inure to Sanger by virtue of the covenant of warranty contained in such conveyance, for the reason that none existed in Stewart. Stewart, or his heirs, or representatives might, if the alleged trust be assumed, have claimed the benefit of Craig's purchase, and in that way his grantees, including the plaintiff, might have succeeded to his rights. *Hunt* v. *Amidon*, 4 Hill, 345. But no such claim has ever been made. On the contrary, for aught that the evidence shows, they acquiesced in the purchase by Craig.

Perhaps the court might, in a proper case, compel a person, standing in Mr. Stewart's relation to the property in dispute, to disaffirm acts done by his trustee, which would work a breach of his warranty, and so avoid a purchase made by the trustee for his benefit, for the purpose of protecting the title of his grantee. *Iddings* v. *Bruen*, 4 Sandf. Ch. 223, 277. But for obvious reasons no such decree could be made, unless the *cestui que trust*, or in case of his death, his heirs or personal representatives were parties to the suit. It is said that a trustee cannot set up a title adverse to his *cestui que trust*, and that a conveyance of the legal title, to the lands in dispute, should be held to embrace an assignment of any equitable right to redeem. Granted. But if the foregoing views are correct, the plaintiff is not a *cestui que trust*, nor had his grantor, Mrs. Sanger, any such equitable right to assign.

If, for any reason, the conclusions we have expressed should be deemed erroneous, we are, nevertheless, of opinion that upon the facts of the case the purchase of Mr. Craig was a perfectly valid one. With respect to the finding of the court below, that the judgment under which Powers redeemed was held by Benedict in

trust for Stewart; that Powers took the assignment thereof subject to that trust, and that Craig is chargeable with notice of such trust, it is at least very questionable whether they are warranted by the evidence. It is not, however, necessary to discuss that question, because, as already shown, the plaintiff, being a stranger to the trust, cannot be heard to disaffirm the acts of the alleged trustees, or to claim in this suit the benefit thereof himself. Stewart, the *cestui que trust*, or his heirs or personal representatives, alone, are vested with that right. The court below did not find whether the legal effect of the transactions between Stewart and Benedict, in respect to the judgment, was a payment thereof, or whether the redemption, under the circumstances proved, was in contravention of the statute regulating redemptions, on the ground that it was made ostensibly by a judgment creditor, but really by a trustee of the judgment debtor, after the expiration of the period within which judgment debtors are allowed to redeem, or whether it was a fraud on the purchaser at the sale under the execution, or otherwise. These questions may not, therefore, be properly before us for adjudication. If the redemption was valid, Craig got a good title by the conveyance from Powers, which must stand until assailed by Stewart, or his heirs or personal representatives. If it was invalid for the reasons suggested, it was a nullity, and Craig got a good title in equity, by his purchase, at the execution sale, which he is entitled to have consummated, by a conveyance from the sheriff, vesting in him the legal title. His receipt of the money paid to him by Powers, in order to effect the redemption, did not destroy his right to such conveyance, unless Powers had a right to redeem. The redemption proceeding cannot be held to be valid for the purpose of destroying the rights of Craig, as a purchaser, at the execution sale, and at the same time be held to be invalid for the purpose of avoiding the conveyance to Craig, made by the same person who effected the redemption.

The only remaining questions relate to the finding of the court below, that Craig, upon entering upon the collection of the rents on the assignment of the lease of the property in dispute, was in the position of a trustee for Stewart in respect to that property, and that his purchase of the same, while he occupied that position, inured to the benefit of the *cestui que trust* at his election.

We are of opinion that this finding is erroneous. It seems to us to be a perversion of the rule which incapacitates trustees and per-

sons holding confidential or fiduciary relations toward others from purchasing the subject of the trust to apply it to a person occupying the position of the decedent, Mr. Craig. He held mortgages on the land in controversy to secure the payment of the bonds of Stewart, the mortgagor. He had also become liable as the surety of Stewart, and held as an indemnity against that liability another mortgage of the same land, made by Stewart, and also an assignment of a lease thereof for a term of years between Stewart as lessor and one Cook.

Treating the assignment of the lease as constituting the relation of principal and agent between Stewart and Craig, still the subject of the agency was not the property in controversy, but the money received by Craig for the rents thereof for a limited period. Its sole object and purpose were to enhance the security afforded by the mortgage held by Craig for his indemnity. It was not intended to impair any rights of Craig as mortgagee, or to impose any burden or disability upon him, nor did it charge him with the duty or obligation of paying off the judgment against Stewart, or of protecting the mortgaged premises for the benefit of the latter in case the lien thereof should be enforced by a sale. The only duty assumed by Craig was to receive the money paid to him by Cook, to apply the same as directed in the assignment, and in a contingency, which never happened, to re-let the premises in Mr. Stewart's name. That duty he performed, and beyond that his agency did not extend. We have been referred to no authority holding that such an agency undertaken by a mortgagee incapacitates him from purchasing an outstanding title to the property mortgaged, and it is believed none can be found.

It would hardly be contended that an agency to receive and dispose of farm products as directed by the principal, incapacitated the agent from purchasing the farm on a sale thereof under a decree or execution against the principal. See *Hollingsworth* v. *Spaulding*, 54 N. Y. 636. And yet if there be a difference on this point, between such a case, and that now under consideration, it is in favor of the latter, for Mr. Craig had an interest of his own to protect, by purchasing, in order to prevent such interest being cut off by the sale.

It is urged that upon taking the assignment of the lease, Craig, in contemplation of law, went into possession of the mortgaged premises as mortgagee. We think that transaction had no such effect. He certainly was not in actual possession. Although ordinarily the

reception of rents and profits is equivalent to possession, yet he did not receive them in the capacity of mortgagee, or in the assertion of any right pertaining to him in that character. His right to receive them sprang solely from the assignment, and it would have ceased with the payment of the debt for which he had become surety. As mortgagee merely, he had no interest in, or right to demand or receive them. *Parkinson* v. *Hanbury*, 1 Dr. & Sm. 143; S. C., 2 De G. J. & S. 455. The question is material only upon the supposition that a mortgagee in possession is a trustee for the mortgagor, and therefore incapacitated from purchasing. If that proposition should be established the plaintiff might have a right to redeem. For the trust would be raised by implication of law from the relations between the mortgagee and the owner of the equity of redemption. Upon this principle Craig would have been a trustee for Mrs. Sanger. She would then have had the equitable right of enforcing the trust, and her conveyance to the plaintiff might be treated as an assignment of that right which would be effectual notwithstanding the hostile possession of Craig.

But the rule referred to has no application to mortgagees, whether in or out of possession. The relation between a mortgagee and the mortgagor or his grantee is not one of trust or confidence, nor has he any duty to perform in respect to the lands mortgaged which incapacitates him from purchasing an outstanding title thereto. He is allowed by statute to purchase at a sale conducted by himself in execution of a power contained in his mortgage (2 R. S. 546, § 7), and the seventy-third rule of this court, which has the force of a statute, authorizes him to purchase at a sale, under a decree of foreclosure, to which he is a party plaintiff or defendant. Why then should he be precluded from purchasing at a sale under an execution against the mortgagor ? If in possession it is his duty to account in a way onerous to him, not however as agent or trustee but as creditor, for all that he receives comes to him in his own right. After his mortgage is paid he is bound to turn over the possession to the owner of the land, not because he went in under a trust which has ceased but because the mortgage debt has been satisfied. But no duty to protect the equity of redemption against a sale thereof arises on being in possession, nor is any power in fact conferred upon a mortgagee for that purpose. *Kirkwood* v. *Thompson*, 2 De G. J. & S. 613 ; *Clark* v. *Brush*, 6 Conn. 151 ; see, also, *Parkinson* v. *Hanbury*, *supra*.

We think, therefore, it is a misnomer to call a mortgagee a trustee of the mortgaged estate. He is a creditor having a lien like other creditors who hold securities in other forms; and he has opportunities to perpetrate fraud and oppression. The court will afford protection against such acts ; but we are unable to discover any reason for taking a mortgagor out from the large class of debtors who have become indebted upon the security of a pledge of their property, and thus practically making him a ward of the court.

The judgments of the court of last resort, in this State, appear to be decisive on this point. In *Williams* v. *Townsend*, 31 N. Y. 415, it was held that a mortgagee might purchase the mortgaged premises at a sale thereof for taxes. It does not appear that this mortgagee was in possession. But in the subsequent case of *Trimm* v. *Marsh*, 54 N. Y. 599, it was held in effect, that a mortgagee in possession, who had caused the mortgaged premises to be sold under an execution in her favor against the mortgagor, might purchase at such sale. The question arose in a suit in equity, brought by the mortgagor, to redeem, and the court held that a purchaser, with notice, might set up the title acquired by the mortgagee at the execution sale against the claim of the mortgagor to redeem. The same doctrine prevails in England. *Cholmondeley* v. *Clinton*, 2 Jac. & W. 182–185; *Shaw* v. *Bunny*, 2 De G. J. & S. 468; *Knight* v. *Majoribanks*, 2 Mac. & Gord. 10 ; *Kirkwood* v. *Thompson, supra ;* Sugd. on Vend. and Purch. (8th Am. ed.) 689; and in our sister States, *King* v. *State M. F. Ins. Co.*, 7 Cush. 7; *Walthall, Ex.* v. *Rives*, 34 Ala. 92; *Hurmder* v. *Roberts*, 6 Fla. 711; *Woodlee* v. *Buch*, 43 Mo. 231.

No case, in which a contrary doctrine has been held, has been brought to our notice. *Baldwin* v. *Bannister*, cited in 3 P. W. 251, note *a*, is not such a case. In *Shaw* v. *Bunny, supra*, Lord J. Turner states that, having examined the registrar's book, he found that case to be no more than this: " that the mortgagee had bought in the dower of the mortgagor's widow for £50, and claimed to be repaid that sum upon the mortgage being redeemed, and it was decreed accordingly, apparently without dispute, and certainly there was no claim by the mortgagee to hold the dower, which he had purchased adversely to the mortgagor."

The principle on which the rule rests, also, is against its application to mortgagees, as will appear from an analysis of the real relation between mortgagor and mortgagee, and the rights and

obligations of each. That has been often set forth in previous cases, and it would do no good to repeat it here. See *Cholmondeley* v. *Clinton, supra; Astor* v. *Hoyt,* 5 Wend. 603; *Kortright* v. *Cady,* 21 N. Y. 343; *Stoddard* v. *Hart,* 23 id. 556; *Trimm* v. *Marsh, supra,* and cases cited.

Upon the whole, therefore, we are of opinion that the court below erred in its disposition of the case, and that the defendants are entitled to a new trial.

A new trial is granted, with costs to abide the event.

*New trial granted.*