## FOX vs. LIPE.

An *administrator's deed*, under *an order of sale* made by a surrogate previous to the passage of the act of 1819, requiring a *confirmation* of the sale by the surrogate, is a good and valid deed, although executed subsequent to the passage of the act, and without the sale having been confirmed by the surrogate; the act applies only to *future* cases.   •

Whether an 'administrator authorized by a surrogate to *mortgage lands* of the intestate, can legally include a *power of sale* in such mortgage, and whether a foreclosure under such power is valid so as to bar a redemption of the premises, *quere;* but at all events, where the mortgage has been foreclosed under such power and the *mortgagee* has entered into possession, an *action of ejectment* will not lie against him by the heirs of the intestate.

The *filing* of a bond by the administrator, faithfully to apply the moneys to be raised by the mortgage *seven days* after the execution of the mortgage, is a · sufficient compliance with the act requiring such bond to be filed.

A mortgage taken on the loan of $700, to be paid in *ten years* with interest, (the interest not to be paid until the expiration of the ten years,) is *not usurious*, though the loan be made upon an agreement that the mortgagee, in addition to the interest reserved, shall have, free of rent, the use and *occupation of an acre of the mortgaged premises, worth   [ *165 ] eight dollars per year: the whole compensation for the loan not being equal to a, reservation of *compound interest.*

THIS was an action of *ejectment*, tried at the Montgomery circuit in May, 1839, before the Hon. JOHN WILLARD, one of the circuit judges.

The plaintiff claimed to recover one-sixth part of a farm of 120 acres, whereof his father, *Peter W. Fox*, died seized in June, 1816, leaving him and five other infant children his heirs at law. The defendant gave in evidence letters of administration to the widow of the deceased; also two orders (with other proceedings,) of the surrogate of Montgomery, directing the sale of portions of the lands of the intestate for the payment of his debts —the one order made July 12, 1817, and the other, February 2, 1819. He also gave in evidence deeds from the administratrix and others, one to the defendant, and the other to Casper Lipe, his father, for several parcels of the land in question, bearing date April 19, 1819. Also an order of the surrogate, made July 24, 1819, authorizing the administratrix to mortgage the residue of the premises in question in this suit, for the payment of the debts of the intestate. Also a mortgage in pursuance of the order to *Casper Lipe*, dated August 31, 1819, conditioned for the payment of $700 with interest in ten years thereafter. The mortgage contained the usual power of sale, under which the land was sold in April, 1830, and purchased by the mortgagee for $1260. Casper Lipe, the mortgagee, and grantee in one of the deeds is dead, and the defendant is his child and only heir at law. The plaintiff insisted: 1. That the deeds were void, because the sales had not been *confirmed* by the surrogate; and 2. That the power of sale in the mortgage was void, and did not warrant a statute foreclosure: these objections

were overruled, and the plaintiff excepted. The plaintiff objected, *thirdly*, that the mortgage was void, because executed before the administratrix had given a bond pursuant to the statute, for the faithful application of moneys raised on the mortgage. The defendant thereupon produced a certificate signed by the surrogate, and dated September 7, 1819, in which [ *166 ] the *surrogate stated, that the administratrix had *that day* deliver-ed.to him a bond executed by herself, her then husband, and two sureties, *conformable to the statute*. The surrogate who granted the certificate testified that he had no doubt that the bond mentioned in the certificate was delivered to him and filed in the surrogate's office on the day the certificate bears date. The present surrogate testified that he had made diligent search for the bond, and could not find it. The plaintiff insisted that the testimony did not prove that such a bond as the statute requires was filed before the execution of the mortgage, or that such bond had ever been filed. The objection was overruled, and the plaintiff excepted.

*Fourthly* : the plaintiff gave evidence for the purpose of showing the mortgage void for *usury*. On application to *Lipe*, the mortgagee, to make the loan and take the mortgage, he refused, unless he could have the use of one acre of the land mentioned in the mortgage for the ten years the mortgage was to run : the administratrix at first refused, but afterwards consented to those terms ; and Lipe took possession of an acre of land, and held it until the mortgage was foreclosed. The use of the land was worth *seven* or *eight* dollars a year. The judge decided that the mortgage was void for usury. Exception. Verdict for defendant. The plaintiff now moves for a new trial on a bill of exceptions.

*D. Cady*, for plaintiff.

*J. A. Spencer*, for defendant.

*By the Court*, BRONSON, J. Under the act of 1813, some discreet person or persons, to be appointed by the surrogate, was to unite with the, executor or administrator in making conveyances under an order of sale by the surrogate. 1 *R. L.* 451, § 34. On the 12th of April, 1819, an act was passed, *repealing* this section, and providing, that on sales *thereafter* to be made, it should be the duty of the executor or administrator [ *167 ] to make a return of the *proceedings on the order for a sale, to the surrogate, who should examine the same, and if it should appear that the sale had been legally made, and the proceeding fairly conducted, the surrogate should make a further order, *confirming* the sale, and directing conveyances to be executed. *Statutes of* 1819, *p.* 214, § 3, 4. This statute was passed seven days before the two deeds to the defendant,

and to his father, Casper Lipe, bear date ; but the orders for the sales had been made long before ; and if, as is highly probable, the sales had been made before the 12th of April, and nothing remained to be done but to execute conveyances, the statute of 1819 has nothing to do with the case.

But inasmuch as it does not appear when the sales were in fact made, it is, perhaps, necessary to assume that they were made on the day the conveyances bear date. In that view of the question, I still think the deeds may be upheld, although there was no order confirming the sale. The third and fourth sections of the act of 1819, only applied to sales which should be ordered, as well as made, after the passing of the act. These sales had been ordered under the act of 1813 ; and the orders should, I think, be executed in the same manner as though the act of 1819 had not been passed. The legislature repealed one provision, and substituted another in its place. They said, it should no longer be necessary to appoint a person to unite with the executor or administrator in making conveyances ; but in lieu of that safeguard, the executor or administrator should report the sale to the surrogate, and obtain a confirmatory order. I cannot think that the law makers intended to annul any part of an order of sale already made, or make any change in the manner of executing it. In short, the act of 1819, only applied to future cases, and did not touch those which had been previously commenced under the act of 1813, although the execution was not then completed.

II. Although a power of sale is not mentioned in the statute, § 28, and is not a necessary part of a mortgage, it is usually inserted ; and I am not prepared to say, that the power in this mortgage, or the sale under it, was void. But it is unnecessary to decide that question. Whether *the heirs of Fox can still redeem, notwithstanding the statute [ *168 ] foreclosure, is not now the question. It is enough to defeat this action, that the defendant is in possession as heir at law of the mortgagee.

III. The statute provides, that before any executor or administrator shall execute a mortgage, he shall execute a bond to the people, with sureties, conditioned for the faithful application of the moneys to be raised by the mortgage, *which bond shall be filed in the office of the surrogate.* 1 *R. L.* 453, § 29. The secondary evidence was, I think, sufficient to show, that a bond, " *conformable to the statute,*" had been *executed*, and that it was *filed* in the surrogate's office ; and the only possible objection is, that the bond was not filed until seven days after the mortgage bears date. The statute does not say, that the bond shall be filed, as well as executed, before the mortgage is given. It contains no nullifying words, and I think the bond, when filed, was good, and took effect, by relation, from the day of its date. *Jackson v. McMichael*, 3 *Cowen*, 75, *and cases cited.*

IV. Nothing remains but the question of usury. The loan was $700.

The mortgage had ten years to run, and interest was not payable until *the end of the term.* Including the rent of the acre of land, the mortgagee got less for the use of his money than he would have received on a reservation of *annual* interest, which would have been free from all *possible objection.* Although chancery will not enforce an agreement made in advance to pay compound interest, it seems to be agreed that such a contract is not void for usury. 1 *Johns. Ch. R.* 13, 6 ; *id.* 313. 1 *Paige,* 98.

But the mortgagee did not, in legal effect, get the use of the acre of land, as a part of the contract of loan. The administratrix had no power to dispose of the land, and although the mortgagee entered and occupied the property, he might have been ousted by the heirs at law of Fox, and to them he was accountable for the rents and profits. It was said on the argument, that if the borrower pays more than legal interest, it matters not how he obtained the money to make the payment—if he stole it, the transaction will [ *169 ] *nevertheless be usurious. That is undoubtedly true : but the proposition obviously assumes that the excessive interest was actually paid. That is not this case. The administratrix parted with nothing ; nor did she authorize any control over the property of the heirs of Fox. She neither passed any interest in the acre of land, nor did she undertake to secure the enjoyment of it to the mortgagee. In short, the conversation about the acre of land was of no legal importance whatever.

I think the cause was properly disposed of at the circuit.

New trial denied.