GEORGE S. TRIMM et al., Appellants, v. SARAH ANN
MARSH, Respondent.

The legal title to mortgaged premises remains in the mortgagor, and his
   title is not affected by default in payment or by surrender of possession
   to, or the taking of possession by the mortgagee.
The interest, therefore, of a mortgagor out of possession may be sold on
   execution, and the owner of the mortgage in possession can procure such
   sale and become the purchaser, and, after obtaining the sheriff's deed,
   can set up the title thus acquired as a defence in an equitable action to
   redeem, brought by the mortgagor or his grantee.  (GRAY, C., dissenting.)
It seems that payment or tender, by the owner of the equity of redemption
   to a mortgagee in possession, of the amount unpaid, extinguishes the lien
   of the mortgage, and the former may thereupon recover possession in
   an ordinary action of ejectment.
Hubbell v. Sibley (50 N. Y., 472) commented on and distinguished.
The authorities treating of the rights of mortgagor and mortgagee, col-
   lated and discussed in dissenting opinion of GRAY, C.

(Argued June 12, 1873; decided January term, 1874.)

APPEAL from order of the General Term of the Supreme
Court in the first judicial department, reversing a judgment
in favor of plaintiffs, entered upon the decision of the court
at Special Term, and ordering a new trial.   (Reported below,
3 Lans., 509.)

This was an action for an accounting as to the amount due
upon a bond and mortgage, and for the recovery of the
possession of the mortgaged premises, upon payment of the
amount due.

In 1858 one Ridgway, being the owner of certain premises
situate in the city of New York, mortgaged them to an
insurance company to secure $2,000 ; the insurance company
assigned the mortgage to the defendant Sarah A. Marsh.
Ridgway afterward conveyed the premises to the plaintiff
Brown, who subsequently, in October, 1865, entered into an
agreement with plaintiff Trimm to convey the same to him.
In 1861 the defendant Sarah commenced an action to fore-
close this mortgage, making plaintiff Brown and others
parties, and obtained judgment of foreclosure.   The premises
were sold under the judgment in 1862, and defendant Sarah

A. Marsh became the purchaser, and received a sheriff's deed. Immediately after the sale she entered into possession of the premises, and she or the other defendant has ever since been in possession. In October, 1864, by an order of the Supreme Court, granted after due notice and hearing the parties interested, the foreclosure sale was set aside, and declared null and void, and a resale was ordered, which never took place. In November, 1864, the defendant Sarah A. Marsh recovered a judgment against plaintiff Brown, which was duly entered and docketed, and in 1865 she caused an execution to be issued upon said judgment to the sheriff of New York, who, in May of the same year, sold all "the right, title and interest" of which the said Elizabeth C. Brown was seized or possessed in the said land, the said Sarah A. Marsh becoming the purchaser and taking the sheriff's certificate of sale. In September, 1865, she conveyed the said premises by deed to the other defendant; and, in September, 1866, after the commencement of this suit, she also transferred to him the sheriff's certificate, and he soon after received the sheriff's deed. The defendant William B. Marsh had notice of all the facts when he took his title, and was not a *bona fide* purchaser for value. Since the defendants went into possession of the premises they have assumed and claimed an absolute title, free from any right of redemption in the plaintiffs or either of them.

The plaintiffs commenced this action to redeem the said premises from the mortgage and judgment of foreclosure, and the principal defence relied on by the defendants was their title under the judgment and execution sale against plaintiff Brown. The referee decided the same in favor of plaintiffs, holding that the execution sale, being made by the assignee of the mortgagee in possession, was null and void and conferred no title upon the purchaser.

*Wheeler H. Peckham* for the appellants. It was proper for the referee to try the main issue first; and on that being decided the court had power to refer the case back to him to take the account. (2 V. S. Eq. Pr., 194, 195; *Palmer* v.

Statement of case.

*Palmer*, 13 How., 363, 365 ; *Pratt* v. *Stiles*, 17 id., 211 ; *Bantes* v. *Brady*, 8 id., 216 ; Edwards on Referees, 650 ; *Griffin* v. *Cranston*, 5 Bosw., 662 ; *Goodyear* v. *Rubber Co.*, 48 Barb., 523 ; *McMahon* v. *Allen*, 27 id., 336.) Defendant's motion to dismiss the complaint on the ground that there was a tender alleged in the complaint, and that no tender was actually made, was properly denied. (*Phelps* v. *McDonald*, 26 N. Y., 84 ; *Grant* v. *Morse*, 22 id., 323 ; *Gates* v. *Andrews*, 37 id., 659 ; *Manley* v. *Ins. Co.*, 1 Lans., 25 ; 2 Crary, 270 ; 2 Van Sant., 113, 114 ; *Beekman* v. *Goddard*, 18 J.R., 544 ; *Vroom* v. *Ditmas*, 4 Paige, 526 ; 2 Barb. Ch. Pr., 199 ; *Calkins* v. *Isbell*, 20 N. Y., 152 ; *Grugion* v. *Gerard*, 4 Y. and C. Exch. Cas., 128 ; *Kerr* v. *Purdy*, 50 Barb., 24 ; *Westlake* v. *Ins. Co.*, 14 Barb., 206.) The sale having been set aside, plaintiffs have a right to redeem. (2 Ldg. Cas. in Eq., 49 ; *Hill* v. *Sands*, 5 N. Y. Leg. Obs., 19 ; *Nelson* v. *Cowing*, 6 Hill, 336 ; *Hollister* v. *Bender*, 1 id., 150 ; *McBride* v. *Farmers' Bk.*, 26 N. Y., 450 ; *Raynor* v. *Wilson*, 6 Hill, 469.) The equity of redemption of a mortgagor, after default and after the mortgagee has taken possession, cannot be sold on execution. (*Waters* v. *Stewart*, 1 Cai. Cas., 47, 57 ; *Francis* v. *Nash*, Hard., 53 ; Impey on Sheriffs, 157 ; *Denton* v. *Livingston*, 9 J. R., 96 ; *Baxter* v. *Gilbert*, 12 Abb. Pr., 102 ; *Mattison* v. *Baucus*, 1 Coms., 295 ; *Baltes* v. *Ripp*, 3 Keyes, 210 ; *Hitchcock* v. *Harrington*, 6 J. R., 293 ; *Collins* v. *Torry*, 7 id., 282, 283 ; *Van Duyne* v. *Thayre*, 14 Wend., 234 ; 4 Kent's Com., 43–48 [marg.], 8th ed. ; 3 R. S., 32, § 7 ; 4 Kent's Com., 47, note *d ; Cooper* v. *Whitney*, 3 Hill, 102 ; *Phyfe* v. *Riley*, 15 Wend., 248 ; *Jackson* v. *Willard*, 4 J. R., 41 ; *Fox* v. *Lipe*, 24 Wend., 167 ; *Craft* v. *Merrill*, 14 N. Y., 456, 460 ; *Pell* v. *Ulmar*, 18 id., 140, 142 ; *Mickles* v. *Townsend*, 18 id., 584 ; *Randall* v. *Raab*, 2 Abb. Pr., 314.) The estate of a mortgagee in possession, by lapse of time, ripens into an absolute estate. (Ang. on Lim., ch. 34 ; *Demarest* v. *Wynkoop*, 3 J. Ch., 134 ; *Calkins* v. *Isbell*, 20 N. Y., 147 ; 1 Story's Eq., § 1028 *a ; Rafferty* v. *King*, 1 Keen, 602, *et seq. ;* Rawle on Cov.,    , tit. 84 ; *Bobst* v.

*Brock,* 10 Wall., 519–530.) The lands being held adversely, plaintiff Brown could not convey ; the deed would be void. ( 3 R. S., 30, § 167 ; 2 Hill, 526.) The mortgagee being in possession, as such could not change her title by the enforcement of general liens on the property, or by acquiring titles, the effect of such liens. (Blackwell on Tax Titles ; *Burhans* v. *Van Zandt,* 3 Seld., 525.)

*Justus Palmer* for the respondent. The whole case should have been sent back to the referee on the ground that there had been a mistrial. (*Pratt* v. *Stiles,* 17 How., 311.) A mortgagor of real estate is the legal owner of the land, and the mortgage is a mere security for the debt. (*Packer* v. *Roch. and Syr. R. R. Co.,* 17 N. Y., 295 ; *Power* v. *Lester,* 23 id., 527 ; *Runyan* v. *Mersereau,* 11 J. R., 534 ; *Kortright* v. *Cady,* 21 N. Y., 343 ; *Astor* v. *Hoyt,* 5 Wend., 603.) A mortgagee cannot bring ejectment. (2 R. S., 312–357.) The interest of a mortgagee cannot be sold on execution against him, although the debt be due. (*Jackson* v. *Willard,* 4 J. R., 42 ; 1 id., 590 ; 3 J. Cas., 329.) An equity of redemption may be sold under judgment against the mortgagor, except where the judgment was for the mortgage debt. (1 Cai. Cas., 47 ; 2 R. S., 31, 32, 368.) The fact that the mortgagor is not in possession does not affect his legal title in the premises. (Code, 282–462 ; 2 R. S., 31, 359–368 ; *Waring* v. *Smyth,* 2 Barb. Ch., 119.) The omission to make a tender was not only material on the question of costs, but rendered the whole proceedings defective. (*Beekman* v. *Frost,* 18 J. R., 144 ; 1 J. Ch., 288 ; 2 Barb. Ch. Pr., 199.)

EARL, C. The only legal proposition involved in this case, which we deem it important to consider, is whether a mortgagee of real estate in possession can cause the equity of redemption of the mortgagor to be sold on an execution and become the purchaser of the same, and, after obtaining the sheriff's deed, set up his title thus acquired against the claim of the mortgagee to redeem from the mortgage in an equitable action commenced by him for that purpose ; or, to state

the proposition in other words, has the owner of the equity of redemption of mortgaged premises, after default and after the owner of the mortgage has taken possession, such an interest in the premises as can be sold upon execution against him ? If this question be answered in the affirmative, the decision of the General Term was right and must be affirmed.

The respective rights of the mortgagor and mortgagee in the land mortgaged have been the subject of much discussion, and it is impossible to reconcile all that learned judges and writers have said upon the subject. By the common law of England the legal estate was vested in the mortgagee, to be defeated by the performance of a condition subsequent, to wit, payment at the law day. In default of such payment, the title became absolute and irredeemable in the mortgagee. But, two centuries ago, courts of equity assumed jurisdiction to relieve mortgagors against forfeitures, and, thenceforth, in equity a mortgage has been regarded as a mere security, as creating an interest in the mortgaged premises of a personal nature, like that which the mortgagee has in the debt itself.

These equitable principles have had an increasing influence upon courts of law, and Chancellor KENT says that " the case of mortgages is one of the most splendid instances in the history of our jurisprudence of the triumph of equitable principles over technical rules, and the homage which those principles have received by their adoption in the courts of law." (4 Kent's Com., 158.)

The common-law rule, as modified by the equitable principles above alluded to, still prevails in England. There the courts still hold that the legal title passes to the mortgagee, and becomes by default absolutely vested in him at law, and that the mortgagor has, after default, nothing but an equity of redemption to be enforced in a court of equity. After default the mortgagor can again become reinvested with the title to his land only by a reconveyance by the mortgagee. The same rule prevails in the New England States, and in many of the other States of the Union. But this common-

law rule has never, to its full extent, been adopted in this State. Here the mortgagor has, both in law and equity, been regarded as the owner of the fee, and the mortgage has been regarded as a mere chose in action, a mere security of a personal nature. ( *Waters* v. *Stewart*, 1 Caines' Cases in Error, 47; *Jackson* v. *Willard*, 4 John., 42; *Runyan* v. *Mersereau*, 11 id., 534; *Astor* v. *Hoyt*, 5 Wend., 603; *Packer* v. *Rochester and Syracuse Railroad Co.*, 17 N. Y., 283–295; *Kortright* v. *Cady*, 21 id., 343; *Power* v. *Lester*, 23 id., 527; *Merritt* v. *Bartholick*, 36 id., 44.)

Prior to the Revised Statutes the mortgagee could maintain ejectment to recover the mortgaged premises. This right has been taken away (2 R. S., 312), and now the mortgagor, both before and after default, is entitled to the possession of the premises, of which he cannot be deprived without his consent, except by foreclosure. It is not disputed that before possession taken by the mortgagee the mortgagor has an interest in the real estate which can be sold upon execution; that his widow is entitled to dower; that he can convey and devise his interest as real estate; that at his death it descends to his heirs; that he has every attribute and right of an absolute owner of the real estate, subject to the lien of the mortgage, and that his title can be defeated only by foreclosure. It is not disputed that the mortgagee before possession taken has only a chose in action; that he holds the mortgage only as security for the debt; that he can sell the bond and mortgage by mere delivery as personal property; that at his death they pass to his personal representatives as a portion of his personal estate; that he has no such estate in the land as can be sold on execution, or as can give his widow dower; and that he has no attribute of ownership in the land. It was said by Judge JAMES, in *Power* v. *Lester* (*supra*), that " a mortgage is a mere security, an incumbrance upon land. It gives the mortgagee no title or estate whatever. The mortgagor remains the owner, and may maintain trespass even against the mortgagee. A mortgage is but a chattel interest; it may be assigned by delivery, and cannot

be seized and sold on an execution." Judge PRATT says, in *Packer* v. *The Rochester & Syracuse Railroad Company* (*supra*), that "a mortgagee has a mere chose in action, secured by a lien upon the land. Since the Revised Statutes there is no attribute left in the mortgagee, before foreclosure, upon which he can make any pretence for a claim of title. For the mere right, when he goes into possession by the consent of the mortgagor, to retain possession, is not an attribute of title. He would have the same right in case of a pledge."

At common law, payment or tender at the law day extinguished the lien of the mortgage and reinvested the mortgagor, without a reconveyance by the mortgagee, with his title. But tender or payment after the law day did not have this effect, and in such case a reconveyance was necessary; and such is still the rule in England and in many of the States of the Union. But it has always been the law of this State that payment or tender, at any time after the mortgage debt became due and before foreclosure, destroyed the lien of the mortgage and restored the mortgagor to his full title. As the mortgagee had no title, a reconveyance was not required by the law as expounded by our courts. So that here the term law day, which occupies such a prominent place in the early discussions as to mortgages, has no particular significance. The mortgagor has his "law day" until his title has been foreclosed by sale under the mortgage, and it is a misnomer in this State to call the mortgagor's right in the land, before or after default, an equity of redemption; a mere right to go into equity and redeem. This was a proper description of the mortgagor's right in the land according to the law as expounded in England. But in this State the interest of the mortgagor in the land is the same before and after default, and is a legal estate, with all the incidents and attributes of such an estate.

But it is claimed by the learned counsel for the appellants that the position of the mortgagee is materially changed when he gets possession. It is true, notwith-

standing the provision of the Revised Statues which prohibits an action of ejectment by the mortgagee to obtain the possession of the mortgaged premises, that after he has lawfully obtained the possession he may retain it until the debt secured by the mortgage has been paid. Before taking possession the mortgagee has no title in the lands. How can the mere possession change the title from the mortgagor to the mortgagee, or in any way diminish the estate of the one or enlarge the estate of the other? Before taking possession the mortgagee had a mere lien upon the real estate pledged for the security of his debt. After possession he has in his possession the property pledged as his security, the title remaining as it was before. The mortgagor's title is still a legal one, with all the incidents of a legal title subject to the pledge, and the mortgagee's interest is still a mere debt secured by the pledge. If the mortgagee should die in possession, the debt would still go to his personal representatives to be administered as personal estate, and the mortgagor's title would go to his heirs. Payment, or even tender, would destroy the mortgagee's right to retain possession, and would enable the mortgagor to maintain ejectment to recover possession. The mortgagee, in such case, so far from having any title, holds the land as the land of the mortgagor, and is liable to account to him for the rents and profits. Judge COMSTOCK, in *Kortright* v. *Cady (supra)*, says : " The mortgagee's right to bring ejectment, or, being in possession, to defend himself against an ejectment by the mortgagor, is but a right to recover or to retain possession of the pledge for the purpose of paying the debt. Such a right is but the incident of the debt, and has no relation to a title or estate in the land. The notion that a mortgagee's possession, whether before or after default, enlarges his estate, or in any respect changes the simple relation of debtor and creditor between him and his mortgagor, rests upon no foundation. We may call it a just and lawful possession, like the possession of any other pledge, but where its object is accomplished it is neither just nor lawful for an instant longer."

I cannot doubt, therefore, that the mortgagor, after default, and after the mortgagee has taken possession, has such an estate in the land as can be sold upon execution. It is not necessary to decide whether, in such a case, the mortgagee has also such an estate in the land as can be sold upon execution, because, if he has, it does not follow that the mortgagor has not also such a right. They might each own an estate which could be sold. But I am of opinion that the mortgagee has no estate in the land which can be sold on execution. His interest is a mere chose in action, a debt secured by a pledge of real estate. His debt is not merged in the real estate by the possession. He has no interest in the real estate which he can sell, or which can be sold separate from the debt. Such a sale would convey nothing. Whoever took the real estate from him would take it subject to the same liability as he was under to account for the rents and profits to the mortgagor. It has been decided that a transfer of the mortgage without the debt is a mere nullity. (*Merritt* v. *Bartholick, supra.*)

The fact that, at the time of the execution sale, the defendants were in possession, claiming the absolute title, can make no difference, as land held adversely to the true owner can be sold upon execution against him. (*Tuttle* v. *Jackson*, 6 Wend., 213 ; *Truax* v. *Thorn*, 2 Barb., 156.)

I am, therefore, of the opinion that the title of the defendant under the execution sale was valid, and that the plaintiff had no right to redeem.

The order of the General Term must be affirmed, and judgment absolute rendered against the plaintiffs, with costs.

Reynolds, C. The precise question to be determined in this case is whether a mortgagor, after having surrendered possession to his mortgagee, has such an interest in the mortgaged premises as may be sold on execution. The circumstance that Mrs. Marsh took possession as purchaser under a decree of foreclosure, the sale having been subsequently vacated, does not, perhaps, place her in any better

position than that of a mortgagee in possession; and in that aspect only the case will be considered. So long as a mortgagor remains in possession, it is entirely clear that he has such an estate or interest in the mortgaged premises as may be the subject of sale under an execution. He has, unquestionably, in our law a legal estate, and yet it is usually called an equity of redemption merely; but this is to be said only in respect of his relation to the mortgagee; as to all the world he is the owner. The mortgagee has a mere lien for the payment of his debt, and it is a chattel interest. He has no legal estate in the land which enables him to exercise dominion as owner. He may take all needful measures to protect his security, but nothing more. He has not the land, nor can dower or curtesy result from the mortgagor's interest. Lord MANSFIELD said, in *The King* v. *St. Michael's* (Douglas, 602), "A mortgagor in possession gains a settlement because the mortgagee, notwithstanding the form, has but a chattel, and the mortgage is only a security. It is an affront to common sense to say the mortgagor is not the real owner." It has often been held in this State that the interest of a mortgagor is attended with all the incidents of absolute ownership. He may maintain trespass even against the mortgagee, and his widow is entitled to dower. (*Coles* v. *Coles*, 15 Johns. R., 319; 3 Johns. Ca., 329; 1 Johns. R., 590; 4 id., 42.) The question then is, what effect has the actual possession of the mortgagee upon the legal estate of the mortgagor?

Ordinarily, the mere change of the actual possession of real estate would not divest the legal title of the owner, and I can see nothing in the fact of actual possession by a mortgagee that should work such a result. Legal estates in land cannot be transferred by the mere act of taking possession, whether with or without the consent of the owner, unless the possession be held adversely for a sufficient time to ripen into a legal title. The possession of a mortgagee is, apparently, attended with more incidents of legal ownership than any other mere possession. It is sanctioned by a right which

defends the possession against the true owner of the fee until the mortgage debt is fully discharged. In such case the creditor, instead of leaving his debtor in possession and relying upon his intangible legal lien for his security, takes the thing pledged in his own possession and enjoys its use until his debt is paid. He must account for profits and waste to his debtor, and when his debt is paid by the receipt of rents and profits, or in any other manner, his lien is extinguished and his possession is no longer justified by law. Calling the interest of a mortgagor a mere right of redemption in equity proves nothing as to the location of the legal estate in the land. The right of redemption supposes a mere remedy to enforce the legal or equitable rights of the plaintiff, and is not essentially different from the action of ejectment to recover possession wrongfully withheld from the true owner. In the one case, it is true, the remedy is incumbered with the obligation to discharge the lien, and in the other it is not; but I am unable to see that this circumstance can have any effect upon the legal title.

We are referred by counsel for the appellant to the case of *Hubbell* v. *Sibley* (50 N. Y. R., 468, 472) in support of his position. That case involved simply a question as to the operation of the statute of limitations, and although the question as to the rights of a mortgagee in possession was incidentally alluded to in the opinion of Judge GROVER, nothing was decided by the court other than that the action was barred by the statute. The action was for an accounting to ascertain the amount due upon certain mortgages upon lands in which the plaintiff claimed to have a title to one undivided half, and for leave to redeem on paying the amount due. The defendant had foreclosed the mortgages by advertisement, had purchased at the sale and was in possession. The plaintiff claimed that the foreclosure was void, and hence his demand for an accounting and for leave to redeem. The only defence considered was the statute of limitations, and it was held to be a purely equitable action and barred by the ten years' statute. The defendant was, in

the only aspect of the case considered by the court, regarded as a mortgagee in possession, and it was truly said that he might defend his possession until his debt was paid. (*Phyfe* v. *Riley*, 15 Wend., 248 ; *Chace* v. *Peck*, 21 N. Y. R., 581.) But, as has been suggested, all this does not show that the mortgagor is divested of the fee ; but of course it is subject to the incumbrance. Before the Revised Statutes, a mortgagee, after forfeiture by non-payment, might recover the possession of the mortgaged premises, and it was said, in such case, the mortgagee had the legal title, for it prevailed over that of the mortgagor. The Revised Statutes provided that thereafter no action of ejectment should be maintained by a mortgagee, or his representatives or assigns, for the recovery of the possession of the mortgaged premises. (2 Rev. Stat., 312, § 58.) Since that enactment it has been universally assumed that the forfeiture by non-payment does not, *per se*, change the legal title, and it remains precisely as before. If, then, it was changed in the present case, that change resulted from the mere fact of possession ; and that, as before said, I think does not follow.

It may be added that if the mortgagor tenders the mortgagee in possession the amount of money due on the mortgage, there appears to be no reason why he may not recover the possession of the premises in an ordinary action of ejectment. A tender of the amount due upon a mortgage extinguishes the lien, whether accepted or not. (*Farmers' Fire Ins. Co.* v. *Edwards*, 26 Wend., 541.)

I therefore, with considerable hesitation, incline to the opinion that the possession of a mortgagee does not divest the technical legal fee of the mortgagor.

Actual possession, while good enough as against a stranger or a trespasser, does not in very many (and in most) cases prove title. It was held in *Huntington* v. *Smith* (4 Conn. R., 235) that the interest of a mortgagee before foreclosure could not be taken in execution. The legal estate must vest somewhere, and if not in the mortgagee it must remain in the mortgagor. Regarding, therefore, as we must, the inte-

rest of the mortgagee as a mere lien for the security of a debt, actual possession by the mortgagee does not impair the relation of debtor and creditor; it still exists and must continue until actual foreclosure. While it is true that the mortgagor may no t dispossess the mortgagee without discharging the lien, this circumstance proves nothing as to the actual residence of the legal title. The fact that the interest of the mortgagee and the lien of the mortgage is extinguished on payment or tender of the amount due, shows the nature of the interest, and it is not a legal estate. That was in the mortgagor, and the sale under the execution divested his title.

The order should be affirmed and judgment absolute given against the plaintiff, with costs.

GRAY, C. (dissenting). The question presented is, what was "the right, title and interest" of which Elizabeth C. Brown was seized in the mortgaged premises after condition broken, and the mortgagee, or rather the assignee of the mortgagee, had, by adverse proceedings, legally obtained and continued in possession thereof? The execution under which the sheriff sold the premises (if it conformed to the statute, as we must presume it did) authorized the sale of "the real estate" of Brown (2 R. S., 267, § 24), which, as stated by KENT, is an estate nothing short of a freehold (3 Kent's Com. [11th ed.], 509); and after fifteen months from the time of such sale had expired, the purchaser, if the real estate was not redeemed, became vested with the *legal* estate therein from the time of such sale (2 R. S., 373, § 61); unless, therefore, she continued, after being legally dispossessed by the mortgagee, to be seized of the *legal* estate in the mortgaged premises, she had no estate therein tangible by execution upon a common-law judgment. At common law, whenever, after condition broken, the mortgagee became legally possessed of the mortgaged premises, he became vested with the entire estate therein, and all rights of the mortgagor were forever gone; and then the Court of Chancery, upon the complaint of the mortgagor,

interposed ·the exercise of its equity. powers, and, to save the ·mortgagor from the rigor of the common law, afforded him an opportunity to redeem upon such terms as that court should deem just; and this is what, according to BLACKSTONE, is called *the equity of redemption.* (2 Blackstone Com. [Shars-·wood ed.], 158, 159.) This right of redemption being purely an equitable right, originating in a Court of Chancery, was never enforced in a common-law court, but by a Court of Equity only, generally by compelling the mortgagee in pos-·session to account for the rents, issues and profits of the mortgaged premises, without deducting therefrom anything beyond the necessary expenses incurred in managing the premises, including necessary repairs, and sometimes depending upon the peculiar circumstances of each case, allowing a deduction to be made for improvements. (*Mickles* v. *Dillaye,* 17 N. Y., 80.)

A judgment at law is not a lien upon a mere equitable interest in land, and the execution under it will not pass an interest which a court of law cannot protect. (*Bogart* v. *Perry,* 1 John. Ch., 52, 57.) This case was carried to the Court for the Correction of Errors, and the principle here enunciated, with the judgment rendered, was affirmed. (17 John., 351, 354.) In *Watson* v. *Polhemus & Spencer* (20 Wend., 260, 263) Justice COWEN asked, " what is an equity of redemption ? " and answered, " at law, as between mortgagor and mortgagee, it is not known." In *White* v. *Cole* (24 Wend., 116, 142), referring to the equity of redemption, he said it " had never, that he was aware of, been holden tangible by legal execution," and in *Mattison* v. *Baucus* (1 N. Y., 295) it was held that the interest of a mortgagor of chattels, unless united with a right to the possession, was not the subject of levy and sale. The respective rights of mortgagor and mortgagee became, at an early period in the history of this State, a question of great importance to the whole public. The Constitution of 1777 rendered a freehold qualification indispensable to the right of an inhabitant to vote for. certain officers. Prior to its adoption the ancient common-

law doctrine, that the legal estate rested in the mortgagee the moment the mortgage was executed, became somewhat shaken if not subverted by what Lord HARDWICKE, in the case of *Osborne* v. *Scarf* (1 Atk., 603), laid down as a rule of redemption, which, in substance, was that if the person who was entitled to it was in the actual possession, and in the receipt of the rents, issues and profits of the mortgaged premises, such person was considered the owner of the land; and when, after the adoption of the Constitution, and in 1781, it was held in the case of the *King* v. *The Inhabitants of St. Michael* that a mortgagor in possession gained a settlement; that the mortgagee, notwithstanding the form, has but a chattel, and the mortgage was only a security; Lord MANSFIELD making the declaration so often quoted, that "it was an affront to common sense to say the mortgagor is not the legal owner;" it became a matter of deep concern to mortgagor and mortgagee, as well as of interest to the public, to know which of the two was a freeholder and had the right to vote. Under this state of the law, the legislature, in February, 1787, passed an act intended as declaratory of the common law: "that every mortgagor, while he continued in the occupation of the premises mortgaged, and every mortgagee of real estate, to him and to his heirs, after he obtains possession of the mortgaged premises, shall be deemed a freeholder and have the right to vote at any election in this State." This enactment continued in force until the Constitution of 1777 was superseded by the Constitution adopted in 1822, which took effect in January, 1823, a space, in all, of more than thirty-six years, covering periods of great political importance as well as of intense political excitement, during all of which time the public acquiesced in the act as a just exposition of the common law as to who, as between the mortgagor and mortgagee after condition broken and possession had been obtained by the mortgagee, was at law seized of the freehold estate in the mortgaged premises. Had not the bar of the State regarded it as an accurate declaration of the common law as it existed at the time of its passage, the res-

tiveness of mortgagors, thus placed under political restraint, would have called forth an expression, at least, from some portion of the legal profession, against it in a way that the history of the times would have afforded some evidence that it was not acquiesced in by the whole profession. There were, within the time referred to, two cases between debtor and creditor, one involving the question whether a mortgagor in possession of the mortgaged premises had such an estate therein as could be sold on execution, and the like question as to a mortgagee out of possession. I allude to the case of *Waters* v. *Stewart* (1st Caines' Cases in Error, 47) and the case of *Jackson* v. *Willard* (4th Johns., 41), to each of which I shall presently refer as sustaining the act referred to, as a true exposition of the common law. It has never been decided in this State or judicially asserted that a mortgagor, after condition broken and the mortgagee had without his consent legally obtained possession of and was in the receipt of the rents and profits of the mortgaged premises, continued to be seized of the legal title therein, or that the mortgagee, after being thus possessed of the premises, did not become thereby seized of the legal title, until, in 1860, a period of nearly three-quarters of a century after the passage of the act referred to, a distinguished judge, in a case where the point was not in issue, said that " the notion that a mortgagee's possession, whether before or after default, enlarges his estate, rests upon no foundation." (*Kortright* v. *Cady*, 21 N. Y., 343, 365.) The learned judge, for the support of this proposition, rested in some degree, if not mainly, upon the fact that the Revised Statutes had taken away from the mortgagee the right to maintain ejectment as a means of gaining possession of the mortgaged premises after condition broken. I should be content to rely upon the recent cases in the Court of Appeals, *Miner* v. *Beekman* (50 N. Y.. 337), *Hubbell* v. *Sibley* (id., 468) and *Hubbell* v. *Medbury* (MS. opinion of the court, by Folger, J., not yet reported),* as furnishing an authoritative refutation of the position assumed

* 53 N. Y., 98.

by the learned judge. But inasmuch as it is claimed that those decisions are not fully in point, and that the proposition that the mortgagor, after condition broken and the mortgagee has, as in this case, by adverse legal proceedings become possessed of the mortgaged premises, continues to retain a legal estate therein which is bound by judgment and liable to be sold on execution, is established by the authority of adjudications in this State, I will as briefly as a full consideration of the question will permit, examine the cases which it is claimed sustain or contribute to sustain the proposition, and other cases on the subject, as well before as since the Revised Statutes deprived the mortgagee of his common-law remedy of obtaining possession of the mortgaged premises; but, before proceeding, I will premise that no adjudication has been made in this State upon any point involved in the issue decided, or whether before or since the Revised Statutes, conflicting in any respect with the common-law rule as declared by the act of 1787; and that the only other modification of the common-law rule in regard to the respective rights of mortgagor and mortgagee, established by any adjudged case or cases, consists in the extension of what was called the "law day," during the whole period of the mortgagor's possession, giving the mortgagor the legal, not merely the equitable right to pay so long as he has a legal estate in the premises, thus harmonizing the legal right to pay with the mortgagor's legal estate in the premises, and to that extent rendering what is yet sometimes called an equity of redemption a misnomer. The first among the cases referred to is *Stewart* v. *Waters*, the earliest of the reported cases in our own courts on the subject (1 Caines' Cases in Error, 47), decided in 1804, when the act of 1787 was fresh in the minds of the counsel and court, and referred to and sanctioned so far as it was applicable to the question then under consideration, which was whether a mortgagor, in possession after condition broken, had a legal real estate in the mortgaged premises which could be sold on execution. The chancellor, whose opinion was under review, had held that the mortgage was

"merely a lien until foreclosed *or possession taken* under it by the mortgagee, and that thus the mortgagor, until *either of these events* had occurred, was the beneficial owner, a freeholder, qualified to vote as such," and in reference to the act of 1787, said, "it appears to me merely a declaration of the common law previous to the passing of the act, and introduced for greater caution." Hoffman and Hamilton, among the most eminent counsel of that time, arguing to uphold the decision of the chancellor, conceded that if the mortgagor had been out of possession the sale could not have been valid; and it was held that, inasmuch as the mortgagor was in possession, and the rights of the mortgagee were not in question, the mortgagor should be considered the legal owner. KENT, J., at the conclusion of his opinion, said, "the mortgagee was in possession when the equity was sold, and that formed the material ingredients in the case," and was careful to say that his opinion was not intended to apply to the case of a mortgagee in possession. The next case is *Jackson* v. *Willard* (4 John., 42), decided in 1809, in which it was held that the interest of a mortgagee, while the mortgagor was in possession, could not be sold on execution. The next is the case of *Runyan* v. *Mersereau* (11 John., 534). That was for trespass for cutting trees on premises in possession of Runyan, his title to the *locus in quo* having been derived under a judgment against a mortgagor, and the question was whether the freehold was in the plaintiff or the mortgagee, who had not obtained possession, and it was, consistently with the act referred to, held that the freehold was in Runyan. The next case cited is *Jackson* v. *Craft* (18 John., 110), and here, for the first time in this State, the question arose as to whether a tender, by a mortgagor in possession, after the "law day," discharged the land from the lien of the mortgage, and it was held that it did; nothing was required to be done but to ascertain the amount due and the costs; no equities had arisen for adjustment; no reason could be assigned for not holding that which had been regarded as a right in equity a right in law, and thus harmonizing the mortgagor's right to

pay with his right, as declared by the act of 1787, to be considered a freeholder.

We now come to cases decided since the Revised Statutes took effect, the first of which is *Astor* v. *Hoyt* (5 Wend., 605, 617), decided in December, 1830, within a few months after the revision, in which Savage, Ch. J., in an elaborate opinion, after a full and careful review of all the cases bearing upon the relative rights of mortgagor and mortgagee, held precisely what the act of 1787 had, in substance, declared the law to be; which, in the language of the very able chief justice, was, " when the mortgagee takes possession he then has all the right, title and interest of the mortgagor; then he acquires and the mortgagor loses an estate liable to be sold on execution." The next, *Van Duyne* v. *Thayre* (14 Wend., 233, 235), was an action of ejectment for dower by the widow of a mortgagor. The mortgagee being in possession, and Nelson delivering the opinion of the court, held that, although a widow was entitled to dower in what is sometimes called the equity of redemption, upon the ground that until foreclosure *or entry* the mortgagor holds the legal title; but that he is not so regarded as to a mortgagee in possession or those claiming under him after forfeiture. They might, he said, have maintained ejectment before the Revised Statutes, and may now defend themselves if in possession under the mortgage, and hence that the action could not be maintained. In *Phyfe* v. *Riley* (15 Wend., 248, 253, 254, 256), ejectment was brought by Phyfe, whose title was derived from one Burke, a mortgagor of the premises sought to be recovered, against Riley, the assignee of the mortgagee in possession, and a recovery was insisted upon on the ground that, the Revised Statutes having abolished the right of a *mortgagee* to bring ejectment for the recovery of the mortgaged premises until after foreclosure, a mortgagee or his assignee could not avail himself of the mortgage, *as a title*, to bar a recovery. The opinion of the court was delivered by Savage, Ch. J., who, in answer to the ground taken, said: " The cases deciding that a mortgagee might protect his

possession by means of his mortgage, do not give as a reason that the mortgagee might recover possession in an action of ejectment; nor do the Revised Statutes necessarily *alter the case* as to the interest vested in the parties to the mortgage," and that the legislature "certainly did not intend to give an exposition of the rights of the mortgagor and mortgagee any further than as to the particular remedy" of obtaining possession of the mortgaged premises. And after referring to *Stewart* v. *Waters* and *Jackson* v. *Willard*, said, "it cannot be denied that the mortgagee has an interest in the mortgaged premises, and that interest, after forfeiture, is a legal interest," which will protect him in his possession of the mortgaged premises when legally obtained, and being unable to see anything in the Revised Statutes changing this rule of law, he held that the defendant was entitled to judgment. The principle that the mortgagee in possession is vested with the legal title was again held in *Fox* v. *Lipe* (24 Wend., 164, 167). The case of *Van Duyne* v. *Thayre*, after a retrial at circuit, was again brought before the Supreme Court (19 Wend., 162, 168, 169, *et seq.*), where it was held, COWEN, J., delivering the opinion of the court, that the charge at circuit, being in substance that if the defendant entered into possession of the mortgaged premises after condition broken, the plaintiffs had no remedy at law, was unexceptionable; and the reason assigned was that the plaintiff's *right* was only in equity, where the respective rights of the parties could be adjusted. And after referring to *Hitchcock* v. *Harrington* (6 John. R., 290) and *Collins* v. *Torry* (7 id., 278), said: " Both these cases and all cases at law agree in the qualification that, as against the mortgagee, the husband is not so seized that the widow can claim dower. And they introduce " (he said), "I think, even a further qualification, that if the mortgagee have entered for condition broken or foreclosed, the seizin is destroyed," And further on he said, "indeed, all seizin in the mortgagor was thus utterly subverted." This case was decided in January, 1838; in less than two years thereafter, and in July, 1839, a case

peculiar in its facts was brought before the Supreme Court, *Edwards* v. *The Farmers' Fire Insurance and Loan Co.* (21 Wend., 466), and importing more than ordinary interest from the fact that the chancellor had, in a similar case, assailed the decision of that court in *Jackson* v. *Craft*, and said it had been doubted ever since it was reported, and refused to follow it, as appeared from his opinion, then in manuscript, but since reported (7 Paige, 344, 347). The facts in the case to which I allude are these : The business of the Farmers' Fire Insurance and Loan Company was carried on under a statute which provided that when they should become the purchasers of any real estate on which they had made loans, the mortgagors should have the right of redemption of any such property on the payment of principal, interest and cost, so long as the property remained in the hands of the company unsold. The company loaned to the plaintiff a sum of money, to secure the payment of which he executed to them a mortgage, which, after condition broken, they foreclosed, and on the foreclosure sale purchased in the mortgaged premises, and then entered into a contract for the sale of the premises to a third party, who entered thereon, the same being uninclosed and unoccupied, and directed a sewer or ditch to be constructed for the purpose of draining the same. The plaintiff, claiming that the property, notwithstanding the executory contract for its sale, remained in the hands of the defendant unsold, tendered to the company the principal and interest due on the mortgage, together with the costs of foreclosure, with a conveyance to be executed by the company releasing to the plaintiff the mortgaged premises. The company declined to accept the tender or execute the deed upon the single ground, *that the company had made a contract for the sale of the land.* The plaintiff then brought ejectment ; and, on the trial at circuit, the judge charged the jury " that the provisions in the charter of the defendants rendered the sale and foreclosure of the mortgaged property a continuation of the mortgage ; and, consequently, that the plaintiff had the right to redeem ; that the tender was sufficient; and

caused the legal title to revert to the plaintiff so long as the
property had not been actually conveyed." Under this
instruction to the jury the plaintiff recovered, and the defend-
ant, on a bill of exceptions, moved for a new trial. On the
trial no question was raised as to whether the tender was
seasonably made; the only question was as to its sufficiency.
On the argument, the counsel for the defendant insisted that
by the charter the law day was extended and made coexten-
sive with the time the property remained in the hands of the
defendant unsold; and the late George Wood, one of the most
eminent lawyers in this State or elsewhere, who argued for
the defendants, did not claim it to be otherwise. The only
important question (as he said) was whether, after the con-
tract for the sale of the land, it could be considered as remain-
ing in the hands of the defendant unsold; and after arguing
that question fully, and without raising or alluding to any
other question, submitted the case, thus in effect conceding
that by the charter the law day for payment was extended,
and the right of the plaintiff was the same as before fore-
closure, provided the premises remained in the hands of the
defendant unsold; and COWEN, J., who delivered the opinion
of the court, at the commencement of that branch of his
opinion relating to the rights acquired by the tender, asked,
" then what were the plaintiff's rights as declared by this
charter ? " and answered, " that he had a legal statute right
to redeem so long as the property remained in the hands of
the defendant unsold, and this, notwithstanding the decree of
foreclosure. I will put it " (said he) " that the defendants had
made a legal and valid stipulation in their mortgage that the
plaintiff might so redeem; for the charter shall be read as a
part of their mortgage. What would have been the conse-
quence of actual payment? The counsel for the defendants
concede that it would nullify the mortgage in all cases, and
both the mortgage and decree in this case, and thus revesting
the title in the mortgagor." The learned judge need not
have gone further, but, continuing, he said : "It is strenuously
insisted that a tender and refusal shall not even touch

the lien," and this (as he said) was put upon the general law in respect to redemption, alluding, doubtless, to the chancellor's manuscript opinion before him; for it was not, so far as appears from the case as reported, insisted upon by the counsel who argued the cause, who, in effect, conceded that the general law of redemption was inapplicable to this case; and the learned judge, after in substance stating he was of that opinion, proceeded to vindicate the doctrine of the Supreme Court, as laid down in *Jackson* v. *Craft*, and arrived at the conclusion that a tender, made at any time after the day stipulated for payment and before foreclosure, would destroy the lien of the mortgage. In this he should, consistently with his opinion in *Van Duyne* v. *Thayre* (19 Wend., 162), delivered less than two years previous, be understood to intend that such tender, if made before foreclosure or legal entry, without the consent of the mortgagor, would destroy the lien of the mortgage. After concluding this branch of his opinion, and saying, "whatever be the law of mortgages in general," asked, "how stand the defendants when placed upon the footing of their own charter?" and answered by deciding that, by the charter, the time for redemption was, by statute, coextensive with the time the mortgaged premises remained in the hands of the defendants unsold, notwithstanding the time fixed for payment by the mortgage, or the foreclosure and sale; and then held that, notwithstanding the executory agreement for the sale of the premises, they were, nevertheless, unconveyed, and hence unsold. The chancellor, as may be seen in *Merritt* v. *Lambert* (7 Paige, 344), differed with the Supreme Court, not only as to the effect of the tender destroying the lien of the mortgage, but as to the effect of the contract for the sale of the premises; and the case was carried to the Court for the Correction of Errors (26 Wend., 541), where two opinions were delivered, one by the chancellor, adhering to his opinion in *Merritt* v. *Lambert*, and the other by Senator VER PLANK, who said he fully concurred with COWEN, J., in all the conclusions arrived at by him in the Supreme Court.

Those conclusions were, that the company were proper
parties defendants; that the premises remained in the hands
of the defendants unsold, and that the tender was made by
the plaintiff in time to divest the defendants of their estate
in the premises; and, as bearing upon the last proposition,
the learned senator discussed the question as to whether the
ancient rule, requiring the tender to be made on the day
stipulated for the payment in order to divest the mortgagee
of his mortgage lien, remained in force; and came to the
conclusion in substance that, by the current of authorities
established by the Supreme Court of this State, the tender,
if it had been made after the law day or before foreclosure,
would have divested the defendants' mortgage of its lien, and
then said, " If the rule of the Supreme Court on the effect
of a tender after the law day remains undisturbed, the right
of the mortgagor in this case is still further extended by the
act of incorporation of the mortgagee, so long as the lands
remain in their hands unsold; " and the judgment was
affirmed, and, I doubt not, properly; nothing was established
by it upon the point in issue here; no rents and profits or
equitable rights had accrued to be adjusted, and nothing was
required to be done to enable the plaintiff to pay the precise
amount exacted by the statute, but to compute the interest
upon the mortgage debt and add to the debt thus increased
the costs and pay it, to obviate the effect of the foreclosure.
It was not the invention of a Court of Chancery, made " to
make the law work justice," but of legislation limited to the
transaction of a single company, without which that contro-
versy could not have arisen; and the case itself would not have
been noticed here but for its having been referred to in *Kort-
right* v. *Cady* (*supra*) as authority for holding that a mortgagor
continued to be a freeholder, after legal entry by the mortgagee
for condition broken. The next case in the order of decisions,
involving the respective rights of one claiming as purchaser
under a judgment against a mortgagor, and a party in posses-
sion of the mortgaged premises under a statute foreclosure,
*Arnot* v. *Postis* (6 Hill, 65.) In that case the judgment had been

recovered before the sale under the mortgage was made; and the sale was by statute inoperative as against a judgment creditor. Arnot, who purchased under the judgment, tendered to the proper party the amount due on the mortgage and costs of foreclosure. The tender was not accepted, and he brought ejectment; and it was held, upon the authority of *Jackson* v. *Craft* (18 John., 110); *Edwards* v. *The Farmers' Fire Insurance and Loan Company* (21 Wend., 540); S. C., in error (26 Wend., 467), BRONSON, J., delivering the opinion of the court, that, although the law day had passed, an effectual tender could have been made to destroy the lien of the mort- gage at any time before foreclosure; and that, inasmuch as the statute had provided for saving the rights of judgment creditors by a provision that they nor *their rights or interests should be affected by such sale*, held that the tender, though after foreclosure, was in behalf of Arnot, who claimed under such judgment as seasonably as if it had been made before fore- closure made and he had judgment; which was reversed by the Court for the Correction of Errors. (2 Denio, 344.) The reversal was by a close vote. Five members of the court were of opinion that a tender made after the day specified in the mortgage for payment would not have the effect to destroy the lien of the mortgage. One, without considering that question, placed his decision upon other grounds. Upon what grounds the five other members of the court voted for reversal is not stated in the report of the case. The cases of *Waring* v. *Smith* (2 Barb. Ch., 119, 135) and *Packer* v. *The Rochester City Bank* (17 N. Y., 283, 295), on account of a judi- cial expression contained in each of them, wholly outside of the issue decided, are cited as bearing upon the question presented by this case. In the former the chancellor, in the course of his opinion, after referring to the Revised Statutes as effecting the remedy of the mortgagee, said: " The only right he now has in the land itself is to take possession thereof and retain such possession until the debt is paid." In the latter case, PRATT, J., held that, at common law, a mortgage was a conveyance upon a condition subsequent, and that, by

the Revised Statutes, there was not an attribute of title in the mortgagee before foreclosure, and said: " For the mere right, where the mortgagee goes into possession by the consent of the mortgagor, to retain possession is not an attribute of title." In the same case DENIO, J., held that, " where the legal title is concerned, a mortgage, which for many purposes is a chose in action, is a conveyance of the land." In *Mickles* v. *Dillaye* (17 N. Y., 80–82), the same learned judge held that the right of a mortgagor, when the mortgagee or his assigns has lawfully acquired the possession, is in equity not strictly a legal right; and in *Mickles* v. *Townsend* (18 N. Y., 575, 584) he held " that for some, and indeed for most purposes, the mortgagor is considered seized, and the mortgagee has a mere lien; still, as between mortgagor and mortgagee, the title is considered as passing by the mortgage for many purposes. Before the Revised Statutes the mortgagee could maintain ejectment after forfeiture, and now, if he gets into possession, he may defend himself upon *the title conveyed by it*, citing *Van Duyne* v. *Thayre* (14 Wend., 233); *Phyfe* v. *Riley* (14 id., 248); *Watson* v. *Spencer* (20 id., 260); *Fox* v. *Lipe* (24 id., 164; 2 Sandford, 325). It is enough to say of the cases of *Power* v. *Lester* (23 N. Y., 527) and *Merritt* v. *Bartholick* (36 id., 44), that no principle was involved in any issue decided in either of them bearing upon the question now under consideration. It may, for all the purposes of the case before us, be conceded that where the mortgagee enters into possession under an agreement with the mortgagor to retain it until his debt should be paid, that his possession thus acquired would not work a change in the legal title. The mortgagee, in such case, might be regarded as entering in subordination to the title of the mortgagor, and not upon the assertion and strength of his own title; the relation to each other would then rest upon their arrangement, and not upon the rule of equity devised by the Court of Chancery to alleviate the condition of the mortgagor from the harsh consequences of his mortgage deed. The statute depriving the mortgagor of his common-

law remedy by ejectment, did not carry with it an implica-
tion that the mortgagor should not surrender and the mort-
gagee take possession with all the rights resulting from a
possession, which might theretofore have been acquired by
ejectment. But whatever may be the rights of a mortgagee
who has obtained possession by the consent of the mortgagor,
they can have no bearing upon the question here presented.
The entry in this case was not only without the consent, but
in hostility to rights of the mortgagor. It was under a fore-
closure sale, and in the faith that he had acquired not only
all the interest of the mortgagor therein, but an absolute title,
and although the sale has been set aside, no resale was had or
possession disturbed, and he remained upon the legal footing
of a mortgagee in possession (2 Washburn on Real Property
[3d ed.], 2d vol., 169), leaving him as against the mortgagor
with rights in equity attainable in that court only. (*Mickles*
v. *Dillaye and others*, 18 N. Y., 80, 82.)

The rule that, after forfeiture and condition broken, the
mortgagee, if he be in possession, is considered as having
the legal title, was reasserted and again decided in the
Supreme Court as late as 1860. (*Bolton* v. *Brewster*, 32
Barb., 389, 395.)

We now come to the case which furnished the Supreme
Court with the authority for the decision now under considera-
tion (*Kortright* v. *Cady*, 21 N. Y., 347, 365), which was an
action of foreclosure brought by Cortright, a mortgagee,
against Cady, in possession of the mortgaged premises as
assignee of the mortgagor, and Cady not only answered but
proved on the trial that, after the day stipulated for payment
and before action brought, he tendered to Cortright the princi-
pal sum secured by the mortgage, with the interest thereon,
and yet Cortright had judgment of foreclosure and for the sale
of the mortgaged premises, which was affirmed by the Supreme
Court and reversed by the Court of Appeals. The point in
that case was simply whether a mortgagor, while in possession
representing the title, could, after the day stipulated for pay-
ment, make a tender of the amount secured by the mortgage,

in all respects as effectual as he could have done on what has been called "the law day." It was, in principle, the case of *Jackson* v. *Craft* (18 Johns., 110) over again, the authority of which Cortright was encouraged to contest, because of its having been overruled by the chancellor in *Merritt* v. *Lambert* (7 Paige, 344), and held to be unsound by several members of the Court for the Correction of Errors in *Post* v. *Arnot* (2 Denio, 344). The issue in the case was foreign to the one here presented. Its importance to these defendants consists of the *obiter* statement of one of the learned judges that "the notion that a mortgagee's possession, whether it enlarges his estate or in any respect changes the simple relation of debtor and creditor, before or after default, between him and his mortgagor, rests upon no foundation." He conceded the legal right of the mortgagee in possession, to retain it until the mortgage should be paid. If the mortgagor out of possession has, as against a mortgagee in possession, the legal estate, what sort of an estate has the mortgagee? The legal estate can be in but one of them. If, as is claimed, the simple relation of debtor and creditor exists between a mortgagor out of possession and a mortgagee in possession, and that the mortgage, as has been said, "is in no sense a conveyance of the land" but a simple lien, the estate of the mortgagee in possession would be equitable merely, not legal; and could not have prevailed as a defence in ejectment as against the mortgagor's legal title. (*Jackson* v. *McCrea & Dunlap*, 1 John. Cases, 114, 116 ; *Jackson* v. *Sinclair*, 8 Cow., 543, 555, 581.) The grounds upon which a mortgagee of lands in this State has, as against a mortgagor, been permitted to retain possession of the mortgaged premises, was never placed upon any other ground than his legal title. The learned judge held that a mortgagee's possession was the possession of a pledge for the purpose of paying the debt. Concede it to be so, if there can be such a thing as a pledge of real estate, and that it was, as he said, like the possession of any other pledge, it does not help the defendants. Prior to the Revised Statutes, the interest of a pledgor could not

be taken in execution (*Stief* v. *Hart*, 1 N. Y., 20, 28 and cases there cited;) and the statute authorizing such an interest to be sold on execution applies to goods and chattels only. (2 R. S., 366, § 20.)

If the learned judge intended to be understood that a mortgagee's possession, obtained after and by reason of a condition broken, does not enlarge his estate in the mortgaged premises, and that the notion that it does rests upon no foundation, he was clearly in error. It rests, so far as the law of this State is concerned, upon the foundation of an unbroken current of authorities, commencing with Blackstone's Commentaries, followed by the declatory act of 1787, before cited, the accuracy of which was never questioned; and since the Revised Statutes abolishing ejectment as a means of obtaining possession of the mortgaged premises for condition broken, the principle has been re-established in many cases to which I have not only referred, but stated in detail. There are, doubtless, cases in which rights once regarded as mere rights in equity have become rights at law; but they are such rights as a court of law can protect. An equity of redemption is not one of them. (*Bogart* v. *Perry*, before cited.) The issues of fact in an action by a mortgagor to redeem, after possession by the mortgagee, often multifarious, always of an equitable, and never of a strictly legal, character, illustrate the impropriety of trying them before a jury, instead of a Court of Equity, composed of a single judge, having the power to call to his aid a referee instead of a jury, to take the proofs and state an account, often intricate, and seldom, if ever, practicable to be tried by a court and jury. We come now to the cases referred to, recently decided in the Court of Appeals, covering, as I think, the whole question, and upon which alone I would have been content to rely, but for the seeming necessity of reviewing the cases on account of the views expressed in the prevailing opinion in this case. In the case of *Hubbell* v. *Sibley* (50 N. Y., 168), decided since this appeal was brought, the action was by the assignee of a mortgagor out of possession, against a mortgagee in possession, who had entered more than

ten years prior to the commencement of the action, which was for an accounting, and the recovery of the mortgaged premises upon the payment of what should be found due upon the mortgage; and the court, after referring to that provision of the Revised Statutes abolishing ejectment as a means by which the mortgagee could obtain possession of the mortgaged premises, held, in its own language, that " Before the enactment such action could be maintained after forfeiture by non-payment of the money when due, and it was then said that after forfeiture the legal title was in the mortgagee for the reason that his title would prevail at law over that of the mortgagor. Since then it is said he has not the legal title because it will not so prevail. But since the enactment of this section a mortgagee, in possession after forfeiture, can defend his possession in ejectment brought by the mortgagor upon his mortgage," citing *Phyfe* v. *Riley* (15 Wend., 248); *Chase* v. *Peck* (21 id., 481), and proceeding, said : " It can, under these facts, hardly be said that the mortgagee has no legal title, for it prevails at law over that of the mortgagor. While these facts continue the latter must resort to equity for the recovery of his land ; " and then held that the remedy being in equity, it was barred by the ten years' statute. This language and conclusion, that the remedy being in equity the action was barred by the statute limiting the time within which actions in equity should be brought, are susceptible of no other interpretation than that the mortgagee had the legal and the assignee of the mortgagor the equitable estate in the premises. If, however, any doubt remained as to the opinion of the court upon that question, it was soon after removed by the decision in a case not yet reported, *Hubbell* v. *Moulson* (53 N. Y., 225), arising out of the same state of facts. The action was ejectment, brought to test the respective legal rights of the parties, in which the plaintiff offered to prove that before the commencement of the action the mortgage had been fully paid by the receipts of the rents and issues of the mortgaged premises. The evidence was rejected and the rejection was upheld upon the ground, in substance, that a

mortgagee in possession is the owner, and takes the rents, issues and profits of the mortgaged premises in that character, and that the mortgagor's rights are in equity. These two cases establish two propositions; one that the rights of the mortgagor, or those claiming under him, are rights in equity only; the other that he or those claiming under him have not a legal estate in the premises. If they had it is quite certain that they would not have been denied a legal remedy.

This judgment should be reversed and a new trial ordered.

All concur for affirmance, except GRAY, C., dissenting.

Order affirmed, and judgment absolute against plaintiffs.